[Civ. No. 14864. Second Dist., Div. One. Sept. 19, 1945.]

NELLIE SPAHN, Respondent, v. GEORGE L. SPAHN, Appellant.

Morris Lavine for Appellant.

Abner Warshaw and Miriam Shomstein for Respondent.

DORAN, J.—This is an appeal from an order denying the appellant's motion to strike from an interlocutory judgment of divorce, provisions relative to the disposition of certain real property located in Nebraska. It is not contended that the court had no jurisdiction of the land because it was in Nebraska, but appellant maintains that there was no jurisdiction to make the disposition for the reason that the real estate was not community property.

The record discloses that on June 18, 1940, the plaintiff, Nellie Spahn, filed a complaint for separate maintenance, alleging certain Nebraska property to be community property; that thereafter, her husband filed an answer and cross-complaint for divorce which likewise allege the Nebraska property as community property. Following these initial pleadings two amended complaints for separate maintenance were filed and a supplementary answer and cross-complaint, the latter pleadings describing the Nebraska property but not denominating it as community property. On June 18, 1942, a trial was had which resulted in the granting of an interlocutory decree of divorce on the defendant-husband's cross-complaint, determining all property rights of the parties. No final judgment of divorce is shown by the record.

The following minute orders are particularly pertinent to the questions presented on this appeal:

June 18, 1942. Minute order, Dept. 16. "cause transferred from Department 1 is called for trial . . . The Court had a conference with counsel and each litigant in the chambers. . . . (Various witnesses testified.) Interlocutory decree of divorce is granted to defendant on the supplemental cross-complaint and ordered entered. Community property is awarded as follows: 1. Nebraska property to be in joint tenancy and trust, neither party to transfer or encumber same. 2. Plaintiff to give lease for her lifetime to operate this property. 3. Defendant to pay $100.00 per month for life of plaintiff for this lease. 4. Defendant to pay all taxes, etc. on property.

5. Plaintiff to have $8000.00 in Los Angeles, balance to defendant upon her death, but not to be given away by her. 6. Business in Los Angeles to defendant. 7. Maywood property to plaintiff, subject to encumbrance. 8. House in Nebraska to defendant. Furniture in Nebraska to plaintiff. 10. Insurance policy to defendant. 11. $500.00 attorney fees, $250.00 for plaintiff and $250.00 for defendant payable forthwith. 12. House in Nebraska that is sold on contract to defendant. 13. Each party to keep automobiles in their possession as separate property. *By stipulation of both parties as well as counsel, the above order is hereby made.* Attorney for plaintiff to prepare findings and judgment.'' (Italics added.) The above minute order has the following marginal notation: ''In Case No. D193700 see Minute Order of Oct. 22, 1942, Bk. 408, Page 248, amending this order Nunc Pro Tunc.''

October 22, 1942. Minute order. ''Cause called; plaintiff appearing with her attorneys . . . and defendant with his attorney, . . . (No reporter). After a lengthy conference in the judge's chambers, the court amends the minute order of June 18, 1942: 1.—Nebraska property to be in joint tenancy with the right of survival and defendant to give plaintiff a mortgage to protect payments of $100.00 per month to plaintiff for lease; also $3\frac{1}{2}$, adding that in lease a 6 months forfeiture clause be added in the event defendant fails to make payments.''

The findings of fact, filed December 8, 1942, recite in paragraph XII that the parties ''have consented that this court may determine the rights and interests of each of them in or to all the property owned by them or in which they or either of them have any interest or marital rights, and have submitted to this Court the question of any disposition of all property owned by them or in which they or either of them have any interest or marital rights.'' In paragraph XIII the court finds ''that it is necessary to make some disposition'' in reference to all of such property, and that ''to protect the interest'' of each party, it is necessary that such property ''be owned or held by them jointly or in common.''

On March 17, 1944, defendant's motion to amend the judgment was denied, and on August 17, 1944, the court denied defendant's motion to strike from the judgment the provisions relative to certain Nebraska real estate, on the ground that ''said portion is in excess of the jurisdiction of the court and is void and of no effect.'' The present appeal is from the denial of this motion.

■ One of the principal contentions urged by the appellant is that "The Court has no jurisdiction to dispose of anything but the community property." Answering this argument, respondent maintains that "The court had jurisdiction to adjudicate and dispose of the property rights of the parties in the Nebraska real property, because an issue as to this property was raised by the pleadings of both parties."

Section 137 et seq. of the Civil Code, empowers the court to make suitable provision by way of alimony, permanent and temporary support of wife and children, etc., and section 141 states that in so doing the court must resort: "1. To the community property; then, 2. To the separate property of the husband." Sections 146 and 147 authorize the disposition of "the community property, and of the homestead," and section 148 provides that such disposition "is subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court."

In support of the present contention appellant has cited *Robinson* v. *Robinson,* 65 A.C.A. 188, now published in 65 Cal.App.2d 118 [150 P.2d 7], where the court said, "The power of the court in disposing of the property of the parties in a divorce action is limited to their community property. In such a proceeding the court has no power to dispose of the separate property of one of the parties, nor to carve out a life estate therein." However, as pointed out by respondent, the language of that case immediately following the portion quoted by appellant, places a different light on the situation and clearly distinguishes the case from the present litigation. In the Robinson case the court continues: "In the divorce action . . . no issue was made concerning the ownership of the real estate in question, for it was specifically alleged by the wife that the realty was the separate property of the husband. The court therefore was without jurisdiction to award to the wife a life estate therein." In the present action the record discloses that by pleadings and stipulation, both parties sought an adjudication and final disposition of all their property accumulated during a marriage of more than thirty years, regardless of its character as community or separate property. As said in the appellant's brief, "There were property interests involved and the pleadings are somewhat ambiguous concerning them." In fact, it would not be an unwarranted conclusion from the record that the parties themselves were un-

certain as to the marital aspect of their property. It does appear certain, however, that they presented such property as an important issue and invited the trial court to make disposition thereof.

In the case of *Callnon* v. *Callnon,* 7 Cal.App.2d 676, 680 [46 P.2d 988], cited by both parties, the court held: "Where the property rights are put in issue in a divorce proceeding, *either by specific allegations describing such property,* or by allegation that no community property existed, the decree is *res judicata* of such rights." In the same case at page 681 the rule is stated as follows: "It may be taken as settled that the jurisdiction of the court in a divorce proceeding over property rights is limited to the property which belongs to the community *or which is the separate property of the spouses.* This jurisdiction is found in sections 141 et seq. of the Civil Code, which authorize the division of the community property and a lien upon the separate property of the husband in aid of the enforcement of remedial orders made in the proceeding." (Italics added.)

The rule which seems applicable in the present situation is explicitly stated in 27 Corpus Juris Secundum, page 1141:

"Where a party to a divorce invokes the action of the trial court in the determination of property rights, as by submitting the pleadings and proof, such party cannot complain on appeal that the court had no authority to determine those rights."

The above rule finds support in the California cases. In *Allen* v. *Allen,* 159 Cal. 197, 201 [113 P. 160], it was said: "But the superior court in which the action for divorce must be brought is also invested with general jurisdiction to determine title to real property, whether based on legal or equitable claims, and if the parties in a divorce proceeding see fit to make the character of property held by them—whether separate or community—an issue in the proceeding, as the court is vested with jurisdiction to determine that question, as fully as if the title were put in issue in a direct action for that purpose, the same effect must be given to its judgment as if such an action had in fact been brought. While it was not necessary that the question . . . should have been an issue in the divorce proceeding between these parties they nevertheless did make it such. Neither party objected to doing so, but both invited it." Likewise in *Marshall* v. *Marshall,* 138 Cal.App. 706, 707 [33 P.2d 416], the court said: "The issue

as to the property having been fairly made and by both parties submitted to the court for determination, the court had *jurisdiction* to determine the question involved as to the character of the property and to quiet the title of the rightful owner thereto.'' A like holding is found in *Roy* v. *Roy,* 29 Cal.App. 2d 596, 603 [85 P.2d 223].

It should be noted that, in plaintiff's original complaint the Nebraska land was alleged to be community property; that in appellant's original answer and cross-complaint this real estate was likewise alleged to be community property; that in the first amended complaint both Nebraska and California properties were listed as community property; that in the second amended complaint the same property was listed but the phraseology was changed to allege ''that plaintiff and defendant own the following property in the State of Nebraska.'' In the answer to this second amended complaint the appellant denies that the property was owned by the husband and wife, ''but admits that he owns'' such property; similar allegations are contained in the supplemental answer and cross-complaint which also allege ''That there is community property, the nature and extent of which the plaintiff is not informed.'' It will thus be seen that in the various pleadings of both parties, all property, whether community or separate, is set forth and made an issue for the court's disposition.

The appellant's opening brief contains the statement that the record showed ''no stipulation with reference to the disposition of any property.'' There was, however, such a stipulation, as shown by the minute order of June 18, 1942, hereinbefore mentioned, which recites that on the day of the trial ''The Court had a conference with counsel and each litigant in the chambers,'' and after ordering the Nebraska property to be put in joint tenancy, concluded with the following statement: *''By stipulation of both parties as well as counsel, the above order is hereby made.''* (Italics added.) Confronted with this minute order, appellant's reply brief states that such order had been overlooked, and then takes the position ''That the minute order of June 18, 1942 merely purports to make a tentative division of community property; it does not purport to dispose of separate property and may not be construed as showing a stipulation that separate property might be disposed of.'' This argument appears to be based upon the language of the minute order which said, ''community prop-

erty is awarded as follows''; thereafter, however, disposing of all of the property owned by the parties. In view of the entire record, a synopsis of which is set forth at the beginning of this opinion, appellant's contention is untenable. It entirely loses sight of the fact that, whatever the character of the property, whether community or separate, the parties had by their pleadings and stipulation, made its disposition an issue for the court to decide. Under the California cases to which attention has been directed, the trial court then had full jurisdiction to decide such issue.

Nor is there merit in appellant's further point that ''The court prior to the entering of the interlocutory decree manifested its intention not to follow the stipulation referred to in the minute order of June 18, 1942, and its authority cannot be enlarged by such stipulation.'' In this connection attention is called to the marginal notation on said minute order, showing that on October 22, 1942, and prior to the entry of findings and judgment, the court made a further minute order ''amending this order (the minute order of June 18th) Nunc Pro Tunc.'' This amendment was also made, as was the original order, ''After a lengthy conference in the judge's chambers''; it does not purport to alter the original minute order except as specifically set forth in the *nunc pro tunc* amendment; it does not state or suggest that the amendment was not made pursuant to the stipulation of the parties, and there is no evidence that the stipulation had been withdrawn.

Moreover, as stated in the case of *Estate of Kent,* 6 Cal. 2d 154, 163 [57 P.2d 901], ''Stipulations made in open court when required for the regularity of an order are presumed in the absence of a contrary showing affirmatively presented on the record.'' The record here discloses no such contrary showing, and paragraph XII of the trial court's findings specifically recites that the parties ''have consented that this court may determine the rights and interests of each of them in or to all the property owned by them or in which they or either of them have any interest or marital rights, and have submitted to this Court the question of any disposition of all property. . . .''

It may also be noted that at the time the aforesaid minute orders were made, no objection by the appellant appears of record. Likewise, the court's findings and the interlocutory

judgment of divorce which disposed of the property pursuant to the terms of the amended minute order, entered December 8, 1942, appear to have called forth no protest by the appellant until March 16, 1944, when a motion to amend the judgment was made and denied. The appellant's motion to strike out the judgment provisions relative to the Nebraska property was not made until August 17, 1944. The present appeal is not from the judgment but from the order of September 20, 1944, denying this motion.

The respondent contends that the appellant's attack on the interlocutory judgment comes too late, having been made much more than six months after its entry. *Bancroft* v. *Bancroft*, 178 Cal. 367, 368 [173 P. 585] is cited in support thereof, where the court said: "It is well settled that an interlocutory decree of divorce is only subject to attack in the proceeding in which it is entered upon appeal, or by proceedings under section 473 of the Code of Civil Procedure, within six months after the entry of such decree, and that after the expiration of the period within which either of these forms of attack may be made, the trial court is without jurisdiction to alter or set aside its interlocutory decree." Neither of the indicated procedures were followed in the instant case. (See, also, *Abbott* v. *Superior Court*, 69 Cal.App. 660 [232 P. 154]; *De Haven* v. *Superior Court*, 114 Cal.App. 253 [300 P. 95].)

It is the appellant's position, however, that "Where a judgment is void upon its face and requires only an inspection of the judgment roll to determine its invalidity, it may, upon motion of the parties or upon the court's own motion, be vacated or stricken from the files," and that where portions of a judgment are void, such portions may likewise be stricken. Appellant's contention in this regard appears to be founded on the argument previously considered herein, that the trial court was without jurisdiction to dispose of anything other than community property; further, that by ordering the Nebraska realty placed in joint tenancy with a life lease for which the defendant is to pay the plaintiff $100 per month, such portions of the judgment were rendered "void for the reason that the disposition the court attempted to make is a legal impossibility."

Assuming that appellant is correct in stating that portions of a judgment which are void on the face of the record may be vacated at any time, it does not follow that such a situation

is here presented. A close scrutiny of the record does not disclose any invalidity on the face of the judgment, nor any want of jurisdiction to render such judgment. Indeed, as hereinbefore shown, quite a contrary situation is revealed, for the entire record indicates that both parties specifically listed all property in the pleadings, and that it must have been their intention that the court should make final disposition thereof. Appellant's contention in this regard, appears to be based, not upon any invalidity appearing on the record, but rather upon a partisan interpretation of the situation which is supported neither by California law nor by the facts of the instant case.

Clearly, appellant's unsupported statement that the court's disposition in the present case is void upon its face and therefore "a dead limb upon the judicial tree," quoted from the case of *People* v. *Greene,* 74 Cal. 400 [16 P. 197, 5 Am.St.Rep. 448], does not make it so. As used in the Greene case, the quotation was doubtless pertinent, for a default judgment was there involved which was unsupported by either personal service of summons or by an affidavit and order for publication of summons. The Greene case, therefore, bears not the slightest resemblance to the present litigation.

As stated in appellant's closing brief, "The presumption is that official duty has been properly performed (C. C. P. Sec. 1963, subd. 15) and the effect of a judgment or final order in an action before a court of this state is conclusive upon the parties and their successors in interest. (C. C. P. Sec. 1908)." Likewise, Code of Civil Procedure, section 1963, subdivision 16 provides that a presumption exists "That a court or judge, acting as such . . . was acting in the lawful exercise of his jurisdiction." These presumptions, not having been satisfactorily controverted, must govern the present situation. That a judgment should not be vacated, either in whole or in part, except for the most cogent reasons, cannot well be disputed. The following quotation from 14 California Jurisprudence, page 1024, is here pertinent: "Whether the judgment is void on its face must be determined from an inspection of the judgment-roll alone, and unless this record affirmatively shows that the court was without jurisdiction, the judgment is not subject to such summary action."

Certainly the record in this case is not an exemplar of

perfection, but again quoting from California Jurisprudence, volume 15, page 69, it may be said that "Unless the record shows affirmatively that something necessary to the jurisdiction of the court was not done, or that something which was required was done in a manner so irregular as to make it void, the presumption is that the thing concerning which the record does not speak was properly done." No such vital irregularity is shown by the record here before the court.

Appellant's argument that the judgment provisions concerning the Nebraska property are void "for the reason that the disposition the court attempted to make is a legal impossibility," cannot be sustained. The complaint here is that, after ordering the property to be placed in joint tenancy between husband and wife, the court could not legally direct that the plaintiff give a lease to defendant "for her (plaintiff's) lifetime to operate this property," and require "Defendant to pay $100.00 per month for life of plaintiff for this lease." This argument, according to appellant's brief, is based upon the proposition that the "Relation of landlord and tenant could not exist between the parties for the reason that there being a unity of title and of interest, one interest could not be subordinate to that of the other." The respondent's answer to this contention is first, that in making such disposition the court "merely acted pursuant to the agreement between appellant and respondent that it do so, so as to protect their respective interests." As heretofore indicated in this opinion, respondent's view appears to be correct.

In reference to the placing of a lease upon joint property, it is stated in 33 Corpus Juris, page 911: "Joint tenants may contract with each other concerning the use of the common property, such as for the exclusive use of the property by one of them." This is exactly what was done in the instant case for the respondent wife gave to the appellant husband the exclusive right "to operate this property," in consideration of the appellant paying respondent $100 per month for life. "Furthermore," as said in respondent's brief, "respondent in her consideration to accept the $100.00 monthly payments during her lifetime, waived her right to receive any additional income, rents, or profits from the property which consists of 240 acres of valuable farm land, to which she as a joint tenant was lawfully entitled thereto."

That there exists no legal inconsistency between joint ten-

ancy and a contractual relation of landlord and tenant entered into by the joint tenants, seems clear. The appellant has at some length discussed the general rules concerning possession and enjoyment of jointly held property, and in particular, the rule of law that ''one [co-]tenant may not maintain an action against [the other] cotenant who is in sole possession of the property to recover rent for the [other's] occupancy,'' etc. The case of *McWhorter* v. *McWhorter,* 99 Cal.App. 293 [278 P. 454] is cited as authority. In the absence of any lease or agreement between the joint tenants this rule is correct, but neither the McWhorter case nor any other to which attention has been directed, has stated that it is improper for joint tenants to contract with each other as they will. In fact, the rule as heretofore quoted from 33 Corpus Juris, page 911 expressly recognizes that right. In the McWhorter case property had been deeded to the parties as husband and wife although the name of the grantee ''wife'' was assumed without warrant. The court there said: ''In the present case the premises were not leased or rented, but upon the contrary were occupied by the defendant alone as his domicile. He was therefore not liable to the plaintiff for its rental value. . . .'' The case is not authority for the appellant's contention.

To do anything other than order an affirmance in the instant litigation would tend to impeach the legal sanctity of a judgment which was invited and apparently acquiesced in by both parties at the time it was entered; one which is valid on its face and which, under the law, must be presumed regular in all respects.

The order appealed from is therefore affirmed.

York, P. J., and White, J., concurred.