[Civ. No. 30396.   Second Dist., Div. One.   Oct. 17, 1966.]

ELLIA PAWLOVSKY ROBERTS, Plaintiff and Appellant, v. RALPH BARNETT ROBERTS, Defendant and Respondent.

Rhodes & King and Richard Ruman for Plaintiff and Appellant.

Jerome J. Mayo for Defendant and Respondent.

LILLIE, J. — The parties were married on December 14, 1960, and on October 25, 1963, a separation occurred during which defendant husband sued for divorce. An agreement regarding community property was entered into on February 18, 1964, wherein household furnishings valued at $6,000 were given to the wife, and the increment from December 14, 1960, to the date of the partnership interest of the husband in an accounting firm, valued at $9,000, was given to him. On March 13, 1964, the parties reconciled and the complaint was dismissed. The final separation occurred on November 4, 1964, and on November 18, 1964, plaintiff wife filed an action for divorce. In December 1964, defendant filed a petition in department 95 of the Los Angeles Superior Court for a determination whether plaintiff was a mentally ill person; she was examined by court-appointed psychiatrists and her own physician and found by the court to be not mentally ill; the

petition was dismissed and plaintiff was released. Thereafter, on January 16, 1965, defendant filed his answer and cross-complaint and on January 12, 1965, pursuant to stipulation, the court ordered defendant to pay to plaintiff $675 per month alimony pendente lite and other expenses, $2,000 to her attorney on account of attorney's fees and $1,000 to her attorney for his services in defending her in the proceeding brought in department 95. Thereafter, plaintiff moved to New York. The divorce hearing was set for June 24, 1965, whereupon counsel entered into a series of negotiations. During this time plaintiff was living in New York with her family and was under the care of Dr. Impastato, a psychiatrist. Through her counsel she demanded a settlement, and the proposed property settlement agreement wherein defendant agreed to pay the sum of $9,000 was transmitted to her in New York by her counsel. Upon her arrival in Los Angeles and under the supervision, and with the advice, of her attorney and his written approval, plaintiff signed the agreement on June 22, 1965. On June 24, 1965, the cause was heard as a default; upon the testimony of plaintiff and her witness, the trial court granted plaintiff an interlocutory decree of divorce, approved the property settlement agreement and incorporated some of the provisions thereof in the decree awarding plaintiff the household furniture and furnishings and ordering defendant to pay plaintiff $9,000 at the rate of $750 per month, commencing on July 11, 1965, until paid, $1,900 additional attorney's fees and $207 costs. Accordingly, defendant began the payments and is presently making the same. On October 15, 1965, plaintiff moved for an order setting aside default and default judgment (interlocutory decree of divorce) under section 473, Code of Civil Procedure. She appeals from order denying the motion.

"The authority to grant relief under section 473 of the Code of Civil Procedure rests in the sound discretion of the trial court; . . . its decision will not be disturbed in the absence of a clear showing of an abuse in the exercise of such discretion [citation] ; and . . . the burden is upon the appellant to show as a matter of law that such discretion has been abused." (*Burbank* v. *Continental Life Ins. Co.*, 2 Cal.App.2d 664, 667 [38 P.2d 451].) Appellant argues that inasmuch as "the uncontradicted declarations filed in support of the motion to vacate established" that she was sufficiently mentally and emotionally disabled as not to understand and comprehend the nature of the property settlement agreement (June 22, 1965) and hearing on June 24, 1965 (wherein she

obtained an interlocutory decree of divorce), the court abused its discretion in denying the motion.

Four declarations were filed in support of the motion. The declaration of Dr. Impastato, a psychiatrist practicing in New York, alleges, among other things, that he has had plaintiff under his care since March 4, 1965, for a ''serious nervous condition''; that plaintiff by telephone advised him that she did not understand the court proceedings of June 24, 1965, realized what she had done several days after discussing it with her family in New York, and now realizes she accepted $9,000 as the total final settlement which is inadequate to provide for herself and her daughter (by a previous marriage) for a period of more than one year; that plaintiff requires prolonged psychiatric treatment and is incapable of supporting herself and her daughter; that she suffers from schizophrenic reaction and is subject to delusions aggravated by tension and stress; that the court appearance aggravated her mental condition whereby ''her appreciation of true values is distorted and unrecognizable''; that she was totally unable to comprehend the nature and details of the settlement and that ''she is in dire need of prolonged psychiatric care and will not be able to afford the expenses associated therewith.''

The declaration of Dr. Moffat, a Los Angeles psychiatrist, alleges that he first saw plaintiff on July 13, 1965; that she related to him her marital difficulties and her husband's threats and attempt to institutionalize her for ''an alleged mental illness,'' her inability to make up her mind relative to her marriage and because of pressure from her husband, her decision ''quite reluctant[ly]'' to divorce him, her return to her family in New York where she consulted doctors and entered into psychiatric treatment with Dr. Impastato, his diagnosis that she was suffering from an emotional illness and would need prolonged treatment, Dr. Impastato's warning to her ''against entering into a property settlement because he felt that her mental state was such that she could not use sound judgment in major decisions,'' her return to Los Angeles and her execution of the property settlement agreement ''out of fear and desperation,'' her confusion and inability to understand the nature of the proceedings on June 24, 1965, her growing doubt that she had used sound judgment in accepting the settlement, and her decision that she needed continued treatment; that plaintiff is suffering from an emotional illness—acute schizophrenic reaction—which has made it difficult for her to ascertain true values and caused her to accept solutions to her problems with great rapidity regardless

of the consequences; that at the time plaintiff signed the agreement she was quite "definitely unable to clearly understand and comprehend the nature of the settlement," and was confused and unable to face the realistic consequences of the settlement; and that she is totally incapable of earning a living for herself and her daughter and "is desirous of wanting to reopen the hearing and press for an improvement in her settlement situation."

Ronald L. Goldman, plaintiff's attorney in the divorce proceedings, declared that defendant filed a petition against plaintiff in department 95 alleging her to be mentally unsound; that he represented her at the hearing, the court found that she was not mentally ill and the petition was dismissed, and he assumed that her mental condition was adequate for her to understand the proceedings in the divorce case, the settlement negotiations and the effect of the hearing on June 24, 1965; that the proposed property settlement agremeent had been presented to her while she was in New York under the care of Dr. Impastato and living with her family; that when she returned to Los Angeles she told him that she did not wish to go through with the divorce but if she had to do so she "would accept the settlement agreement as proposed"; that although he advised her that in his opinion the settlement was inadequate, she concluded that she preferred to sign the same and have the matter speedily ended without substantial conflict; that he was aware that she was under the care of a psychiatrist in New York and under the care of a psychiatrist in California; that after the hearing he received various telephone calls from plaintiff and the first concrete information he had concerning her mental condition was received by him on July 9, 1965, from Dr. Impastato.

Plaintiff's declaration alleges simply that she desires to set aside the judgment for she now realizes that the settlement is wholly inadequate and that within a year she will have no income; that she is informed by her psychiatrist that she will have to undergo long treatment, the course of which will be costly; and that she would not have entered into the agreement had she been thoroughly aware of the nature and consequences of the proceedings and the effect of the agreement.

In opposition, defendant filed the declaration of his lawyer, Jerome J. Mayo, because he [defendant] had been sent by his employer to and now lives in Lima, Peru. The declaration consists primarily of conclusions and arguments and contains

little factual material. He did allege that the within matter had been in the courts for many months and that over this period he had many conferences with the attorney for plaintiff, who was then in New York under the care of Dr. Impastato and living with her family; that a demand for settlement was made by plaintiff and her lawyer which was finally met by defendant in an agreement to pay plaintiff over $9,000; that for many months during the pendency of this action defendant was paying alimony pendente lite and during the marriage spent his earnings on plaintiff and her daughter by a prior marriage; that between December 19, 1964, and June 24, 1965, plaintiff, living with her family and under the care of her own psychiatrist in New York and the advice of competent counsel, had ample time and opportunity to know what she was doing; that in December 1964, department 95 of the superior court determined, upon the opinion of three court-appointed psychiatrists and her own private physician, that plaintiff was not a mentally ill person; that there is no question of community property inasmuch as since the marriage defendant has been unable to save any money and the only asset he has is a partnership interest in an accounting firm, the relationship of which was established long prior to his marriage; that plaintiff's attorney prolonged the filing of a setting card in the case so that plaintiff would continue to receive alimony pendente lite, to stop this drain he filed a declaration and motion to have the matter heard, and the cause was immediately set for trial over plaintiff's objections; that in every conversation he had with plaintiff at the courthouse on the day of trial plaintiff was mentally alert and capable.

In reviewing an order made on affidavits involving the determination of a question of fact, this court is bound by the same rule that controls the resolution of a factual issue on oral testimony; if there is any conflict in the affidavits that favoring the prevailing party must be accepted as true, and since all intendments are in favor of the ruling of the lower court, the affidavits in behalf of the successful party are deemed not only to establish the facts directly stated therein but all facts reasonably to be inferred therefrom. (*DeWit* v. *Glazier,* 149 Cal.App.2d 75, 81-82 [307 P.2d 103]; *Daniels* v. *Pitman,* 123 Cal.App.2d 345, 347 [266 P.2d 820]; *Baratti* v. *Baratti,* 109 Cal.App.2d 917, 922 [242 P.2d 22]; *Reeves* v. *Reeves,* 34 Cal.2d 355, 360 [209 P.2d 937].) Resolving whatever conflict existed in the facts presented by the five declarations, weighing the evidence contained therein, and indulging all reason-

able inferences in favor of the opposing party, the trial judge in denying the motion found that plaintiff had not established that her condition was such that she did not know the nature and purport of the property settlement agreement signed by her on June 22, 1965, and the hearing on June 24, 1965. Applying the foregoing rules, this court will not disturb the court's finding in the absence of a clear showing of abuse of its discretion.

It is established by the declarations in support of the motion that during most of the proceedings—from shortly after the complaint was filed to seven days before she signed the property settlement agreement and obtained her interlocutory decree—plaintiff was in New York living with her family and under the care of a psychiatrist and advice of competent legal counsel, and that she had in her possession in New York the proposed settlement agreement which was the result of her demand upon defendant; that all during this time her psychiatrist knew of her domestic problems and her mental condition. Had Dr. Impastato thought that plaintiff was in no condition to enter into the agreement and attend the trial, he made no objection to her proceeding in her divorce case in the regular, ordinary manner. At no time did Dr. Impastato inform plaintiff or her counsel that she was mentally ill and should not go to trial. Moreover, plaintiff's claim to Dr. Impastato, recounted by him in his declaration—that she did not understand the proceedings in court at the time of her appearance, realized what she had done several days after she fully discussed the same with her family in New York, and now for the first time realizes that she accepted $9,000 as a final settlement—completely disregards the established fact that it was plaintiff and her counsel who made the demand resulting in the property settlement agreement, that at that time she was under the care of Dr. Impastato, that the proposed property settlement agreement was sent to her in New York for her signature while she was living with her family and under her doctor's care, that she had every opportunity to, and no doubt did, consult her family and Dr. Impastato before signing the same and that she affixed her signature to the agreement while being advised by competent legal counsel, who also approved the same in writing. It is evident, too, from his declaration that Dr. Impastato actually knew nothing specifically of plaintiff's condition at the time she signed the agreement and that his conclusion, that her condition was aggravated by the stress of appearing in court, was not based upon

his actual knowledge of her condition at the time. The same may be said of Dr. Moffat who first saw plaintiff on July 13, 1956, almost three weeks after plaintiff had signed the agreement and obtained the interlocutory decree and who had no personal knowledge of plaintiff between January 1965 and July 13, 1965.

From all of the declarations the trial court was justified in assuming that when the proceedings against plaintiff in department 95 were dismissed and plaintiff was found not to be a mentally ill person, that she was in fact not mentally ill; that inasmuch as she was living in New York with her family and was under the care of her psychiatrist, that she was free to discuss and did discuss with them her domestic problems and the proposed property settlement agreement which she then had in her possession; that her family, her psychiatrist, her counsel, and she decided that the property settlement agreement was adequate and fair for when she arrived in Los Angeles she told her attorney ''she would accept the settlement agreement as proposed''; that had her condition been such that she was unable to understand or comprehend the nature of the agreement and the divorce hearing, members of her family and her psychiatrist would have made this known to her counsel and to the court; that upon her return from New York she had no hesitancy in signing the property settlement agreement and the only question in her mind was whether to obtain the divorce; that her counsel saw plaintiff and discussed the case with her prior to her execution of the agreement and his only advice to her was that in his opinion the same was inadequate, but she concluded that she preferred to sign the agreement and have the matter speedily ended; that had her counsel actually disapproved of the agreement and felt that it was inadequate or felt that his client was in no condition to sign it or appear in court, he would not have approved the agreement in writing, permitted her to sign the same, elicited her testimony at the hearing that she was satisfied with the settlement and considered it to be a fair one, would not have asked the court to approve the property settlement agreement and would have informed the trial judge and the defendant or his counsel that the hearing could not be had and the agreement approved; that the trial judge presiding at the divorce hearing listening to plaintiff's testimony believed that she was competent and understood what she was doing; that on the day of the hearing ''she was mentally alert and capable'' as alleged by defendant's counsel; that if plaintiff

presently has a mental condition needing psychiatric treatment, the same occurred subsequent to her appearance on June 24, 1965.

Considering the declarations of plaintiff's financially inspired psychiatrists, and that Dr. Impastato, who had been treating plaintiff since March 1965, raised the point of her mental illness for the first time, much too long after the property settlement agreement had been executed and the interlocutory decree of divorce obtained, it is difficult to accept more of the declarations filed in support of the motion than that in fact ''she is desirous of wanting to reopen the hearing and press for an improvement in her settlement situation'' (Declaration of Dr. Moffat) and it is her ''desire to set aside the judgment'' now realizing that the settlement to which she agreed is wholly inadequate and after a year she will have no income and no means of securing income and that she is ''informed by [her] doctors that [she] will have to undergo long medical and psychiatric treatment and that the course of that treatment will be costly over the years'' (Declaration of Ellia Pawlovsky Roberts).

█ We find no equitable basis upon which to disturb the trial court's ruling in light of the relatively short marriage, the funds spent by defendant during the marriage for the support of plaintiff and her daughter by a previous marriage, the relatively small amount of community property acquired by the parties, the substantial alimony pendente lite paid to plaintiff by defendant before trial and the amount of the final settlement which included $9,000, expenses, fees, and obligations paid by defendant on plaintiff's behalf, most of which have been paid by him to date. The factual situation here is not similar to that in *Karlein* v. *Karlein*, 103 Cal.App.2d 496 [229 P.2d 831], and *Brill* v. *Fox*, 211 Cal. 739 [297 P. 25], the only cases cited by appellant in which the reviewing court reversed the trial judge on the issue of discretion. In those cases the appellant had no day in court and had a good defense, and reinstatement of the case for trial would work no injury on respondent. In the instant case, plaintiff was in court for many, many months, had the advice and supervision of a psychiatrist and her family, was under the protection of competent legal counsel and had her day in court.

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.