[No. F002872. Fifth Dist. Dec. 18, 1989.]

In re the Marriage of GAYE M. and GERALD E. MANSELL.
GAYE M. MANSELL, Respondent, v.
GERALD E. MANSELL, Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions of this opinion to be published follow.

**COUNSEL**

John Bucan, T. N. Petersen and Douglas B. Cone for Appellant.

Allen, Cornell & Mason, Allen, Ivey, Cornell & Mason, Allen, Cornell, Polgar & Proietti, Dennis A. Cornell and Tracey Felton for Respondent.

**OPINION**

ARDAIZ, J.—The parties (hereinafter referred to as Husband and Wife) were married on July 24, 1954, and separated on May 15, 1977. At approximately the time of the separation, Husband, a former serviceman eligible for Air Force retirement, filed a disability claim with the Veterans Administration, and elected to waive a portion of his retirement pay to receive Veterans Administration compensation for his disability. (38 U.S.C. §§ 3104, 3105.)

On May 25, 1979, Husband and Wife entered into a stipulated property settlement agreement. Among the terms of said agreement was that Wife was to receive "½ interest in retirement pay and compensation from the Veterans' Administration accrued through Husband's employment with the United States Air Force." On May 29, 1979, an interlocutory decree of dissolution was entered, incorporating the aforementioned property settlement. Paragraph six of the interlocutory decree provides: "Respondent [Husband] shall make an allotment to Petitioner [Wife] in an amount equalling fifty percent (50%) of the gross retirement pay and compensation from the Veterans' Administration accrued through Respondent's employment with the United States Air Force, and shall increase such allotment from time to time in an amount necessary to equal fifty percent (50%) of the gross amount of any and all increases in such retirement pay and compensation from the Veterans' Administration that may occur in the future until the death of either party."

The interlocutory judgment was incorporated, in all material respects, into a final decree of dissolution entered June 4, 1979.

Nearly four years later, on or about May 13, 1983, Husband moved for an order modifying the interlocutory and final decrees. Specifically, he sought to strike from those decrees the aforementioned paragraph six. The basis for the proposed modification was the United States Supreme Court's decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], and the congressional response to the *McCarty* decision, the federal Uniformed Services Former Spouses' Protection Act, 10 United States Code section 1408 (FUSFSPA). Husband noted the *McCarty* decision precluded characterization of military retirement benefits as community property, and that FUSFSPA, to the extent it overruled *McCarty* in this respect, was unconstitutional. Alternatively, Husband argued that FUSFSPA itself did not authorize division of the retiree's *gross* pay, and that his disability benefits should be excepted from the division provided for by paragraph six of the interlocutory and final judgments.

The Merced County Superior Court denied Husband's motion for modification of the interlocutory and final decrees on June 29, 1983, and Husband's subsequent motion for reconsideration was denied on August 1, 1983.

Husband appealed to this court on August 2, 1983, from the superior court's denial of his motion for modification, as well as from the denial of the subsequent motion for reconsideration. (We will henceforth treat the two motions, and the appeals therefrom, as one.) We affirmed the trial court's denial of the motion to modify the original judgment in an unpublished opinion encaptioned *In re Marriage of Mansell.* Husband's petition for review by the California Supreme Court was denied on April 29, 1987, and he thereafter sought and was granted review in the United States Supreme Court. In *Mansell* v. *Mansell* (1989) 490 U.S. 581 [104 L.Ed.2d 675, 109 S.Ct. 2023], the United States Supreme Court reversed our unpublished opinion and remanded the matter to this court "for further proceedings not inconsistent with" the opinion of the United States Supreme Court.[1]

## DISCUSSION

Before addressing the contentions raised in the instant case, it would doubtless be helpful to discuss our opinion in *Mansell I,* inasmuch as that opinion was not published. In *Mansell I,* we were initially called upon to determine whether the trial court's denial of the motion to modify the original judgment was an appealable order. Without undue repetition, it is sufficient here to explain that we concluded an appeal could be taken from that order.

Having thus cleared the initial jurisdictional barrier on appeal, we then went on to reach "the merits of the appeal" in *Mansell I,* i.e., whether the order denying modification should stand. We concluded that the order was proper. In so deciding, we considered and rejected several arguments raised by Husband, foremost of which was that the lower court's 1979 judgment was void for lack of subject matter jurisdiction. Also rejected was Husband's contention that the judgment was the result of a mutual mistake of law.

In presentation to the United States Supreme Court, there appears to have arisen some question over whether the issues we addressed in *Mansell I* related to the merits of the trial court's 1983 order denying modification, or related instead to the merits of the 1979 judgment of dissolution.

---

[1] For the sake of brevity and ease of identification, we will refer to our unpublished opinion as *Mansell I,* and to the opinion of the United States Supreme Court as *Mansell* v. *Mansell.*

"In a supplemental brief, Mrs. Mansell argues that the doctrine of res judicata should have prevented this pre-*McCarty* property settlement from being reopened. *McCarty* v. *McCarty*, 453 U.S. 210 . . . (1981). The California Court of Appeal, however, decided that it was appropriate, under California law, to reopen the settlement and reach the federal question. . . . Whether the doctrine of res judicata, as applied in California, should have barred the reopening of pre-*McCarty* settlements is a matter of state law over which we have no jurisdiction." (*Mansell* v. *Mansell, supra*, 490 U.S. at p. 586, fn. 5 [104 L.Ed.2d at p. 684, 109 S.Ct at p. 2027].)

As we shall discuss *infra,* we are compelled to acknowledge that this conclusion reached by our high court may have resulted from a failure on our part to sufficiently detail whether we were addressing the judgment or the motion to reopen the judgment. However, in considering whether the 1979 final decree was void for lack of jurisdiction, and in determining whether it was the result of mutual mistake, we were not "reopening" the judgment. As we hope to make clear in this opinion, such examination of the judgment was necessary to properly determine whether the lower court had erred in 1983 when it refused to grant modification.

The order appealed from was a denial of Husband's motion to modify the judgment, a motion filed some four years after the 1979 final decree was entered. The moving papers and argument below are ambiguous as to whether the motion was based on statutory grounds or on equity. The final paragraph of Code of Civil Procedure section 473 has been held to permit a court to set aside a void judgment at any time on noticed motion (*County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105, 110 [183 Cal.Rptr. 741]), and in fact Husband did argue below that the judgment was void for want of jurisdiction. ▇ On the other hand, a motion or action in equity is used to attack final judgments on grounds of fraud or mistake (see, e.g., *Westphal* v. *Westphal* (1942) 20 Cal.2d 393, 397 [126 P.2d 105]), and Husband relied on mistake as a basis for relief as well.

The two forms of attack serve distinct purposes.

"The law is not inflexibly harsh with a divorced spouse who finds himself saddled with an invalid judgment past the point of appeal. He may attack the judgment in a collateral proceeding if it is void on the face of the judgment roll. [Citation.] He may also seek equitable relief, by motion or separate action, for extrinsic fraud or mistake which prevented him from presenting his case. [Citation.]" (*Swain* v. *Swain* (1967) 250 Cal.App.2d 1, 13 [58 Cal.Rptr. 83] (dis. opn. of Friedman, J.).)

It appears Husband's motion was intended to be both a statutory and an equitable attack. In either case, the scope of review is limited to determining

whether or not the lower court's ruling was an abuse of discretion. (*Roberts v. Roberts* (1966) 245 Cal.App.2d 637, 639 [54 Cal.Rptr. 223] [statutory motion]; *In re Marriage of Park* (1980) 27 Cal.3d 337, 347 [165 Cal.Rptr. 792 [612 P.2d 882] [equitable motion].) However, in addressing this question in *Mansell I,* we of necessity had to examine the record for a jurisdictional error such as would render the 1979 judgment void, and for the kinds of mistake or fraud that would have justified equitable relief. Had we found such elements to exist in the judgment below, we might well have concluded that the lower court's refusal to modify was an abuse of discretion.

In the portion of *Mansell I* addressing whether the lower court had subject matter jurisdiction to enter the 1979 judgment, we expressly relied on *Casas* v. *Thompson* (1986) 42 Cal.3d 131 [228 Cal.Rptr. 33, 720 P.2d 921] in concluding that such jurisdiction was vested in the superior court both before *McCarty* was decided and after. We pointed out that the judgment in *Casas* was itself "both post *McCarty* and post-FUSFSPA," unlike the instant case, in which the property division was ordered prior to either *McCarty* or FUSFSPA. We nonetheless cited *Casas* as controlling authority. Our reason for doing so, as we stated in *Mansell I,* was that Husband was making the same argument as had the former serviceman in *Casas:* that "FUSFSPA, at minimum, expressly prohibited state courts from dividing that portion of the retirement pay the former service person elected to receive as disability compensation." We were able to refute this argument by simple reliance on *Casas.* We similarly relied on *Casas* in our rejection of Husband's "mutual mistake of law" argument.

Our *Mansell I* affirmance of the 1983 order refusing to modify the judgment thus reflected our conclusion that Husband had shown no justification in law or equity for reopening the 1979 final decree of dissolution, and that the trial court had therefore not abused its discretion in refusing to modify the decree.

In reversing *Mansell I,* the United States Supreme Court impliedly overruled *Casas* to the extent *Casas* held that "after the passage of [FUSFSPA], federal law no longer pre-empted state community property law as it applies to [total] military retirement pay." (490 U.S. at pp. 586-587 [104 L.Ed.2d at p. 684, 109 S.Ct. at p. 2027].) We reiterate, however, that *Casas* dealt with a post-*McCarty*, post-FUSFSPA division of retirement benefits; the instant case does not.

In any event, the Supreme Court's implicit rejection of *Casas* and its reasoning does not resolve the question before this court on remand. That question is the same one before this court in *Mansell I,* i.e., whether the lower court's refusal to grant modification of a long final, pre-*McCarty*

divorce decree constituted an abuse of discretion. The Supreme Court's removal of part or all of *Casas* from the legal landscape does not change the question on review; it merely requires that we view it from a new perspective. We pose the question once again, then, in light of the United States Supreme Court's decision in *Mansell* v. *Mansell* rejecting the reasoning in *Casas*: Did the court below abuse its discretion by denying Husband's motion to modify the judgment? We find, once again, that it did not.

### Voidness of Judgment for Want of Jurisdiction

■ As we have indicated *supra,* Husband contends the instant judgment was void for want of subject matter jurisdiction. This contention, if true, would be a proper basis for attacking the judgment. (Code Civ. Proc., § 473.) In effect, Husband contends the superior court lacked subject matter jurisdiction at the time the final decree was entered in 1979, that such jurisdiction cannot be conferred on the court by the parties, and that the judgment purporting to impose a division of his retirement pay was therefore void. Husband maintains he had the right to attack the judgment despite its apparent finality.

Husband is correct in his claim that the parties' stipulated property division could not confer subject matter jurisdiction on the superior court. (See, e.g., *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668].) The question here, then, is whether the court had subject matter jurisdiction in the first instance.

Husband's current argument against subject matter jurisdiction rests in part on language in the Supreme Court's *Mansell* v. *Mansell* opinion to the effect that, at the time FUSFSPA was before Congress in 1982, "pre-existing federal law, as construed by [the Supreme] Court, completely pre-empted the application of state community property law to military retirement pay, . . ." (490 U.S. at p. 588 [104 L.Ed.2d at p. 684, 109 S.Ct. at p. 2028].) He interprets this as a reservation of jurisdiction over retirement pay.

The language relied on by Husband was not part of the holding in *Mansell* v. *Mansell;* rather, it was in a portion of the opinion setting out the historical background of the case. The language is a mere acknowledgement by the Supreme Court of its decision in *McCarty* v. *McCarty, supra,* 453 U.S. 210. The *McCarty* opinion, as further characterized elsewhere in *Mansell* v. *Mansell,* "held that the federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property. We concluded that treating such pay as community property would do clear damage to important military personnel objectives." (490 U.S. at p. 584 [104 L.Ed.2d at p. 682, 109 S.Ct. at p. 2026].)

Neither in *McCarty* nor in *Mansell* v. *Mansell* did the Supreme Court refer to subject matter jurisdiction over retirement or disability pay. Indeed, the *McCarty* court characterized the question before it, not as whether a state court had jurisdiction to divide military retirement benefits, but rather whether it could do so pursuant to state, rather than federal, law. (*McCarty, supra*, 453 U.S. at p. 211 [69 L.Ed.2d at p. 593].) The holding in *McCarty* that federal law preempted state law in this area simply meant that state courts were bound to apply federal law in determining the character of military pension benefits. There was no divestiture of jurisdiction.

This conclusion is amply supported by *In re Marriage of Thomas* (1984) 156 Cal.App.3d 631 [203 Cal.Rptr. 58]. In that case, the husband was not directly challenging the division of his retirement benefits; instead, he was challenging the court's authority to hold him in contempt for refusing to turn over to his wife her court-ordered share of those benefits. The argument, however, was the same: "the portion of [the] 1975 divorce decree awarding part of [husband's] military retirement benefits to [wife] is void for lack of subject matter jurisdiction because *McCarty* holds Congress, in enacting the federal military retirement pay system, affirmatively deprived the state courts of the power to divide military retirement pay under state community property laws." (156 Cal.App.3d at p. 635.)

The *Thomas* court first noted the distinction "between preemption occurring when a congressional enactment expressly or impliedly prohibits the states' exercise of jurisdiction over certain subject matter [citations], and that type of superseding which occurs where state law and federal law are so inconsistent that state law must 'give way' because it impedes the accomplishment and execution of Congress' full purposes and objectives. [Citations.] This latter type of preemption requires states to defer their interests, under the supremacy clause, to federal interests, even though Congress has not expressed an intent to preclude state court jurisdiction. [Citation.]"

"The distinction between the two types of preemption is significant. Where Congress exercises its plenary power to deprive state courts of jurisdiction over a particular subject, state court judgments purporting to exercise jurisdiction over the preempted subject are 'nullities and vulnerable collaterally.' [Citation.] Where, as in *McCarty*, a court interprets Congress' actions as 'superseding' or 'overriding' state law, this judicial finding of conflict does not necessarily imply a withholding of subject matter jurisdiction, although the enforcement of conflicting state judgments may be avoided by direct appeal." (156 Cal.App.3d at p. 636.)

Having recognized the distinction, the *Thomas* court then determined that the preemption recognized by *McCarty* fell within the second category,

and that no withholding of subject matter jurisdiction, express or implied, could be found. (See also *In re Marriage of Castle* (1986) 180 Cal.App.3d 206, 213-214 [225 Cal.Rptr. 382].)

Husband's arguments have presented no persuasive reason for this court to deviate from the reasoning and holdings in *Thomas* and *Castle*, and we therefore conclude that subject matter jurisdiction was vested in the superior court when the final decree was entered. While under the reasoning in *McCarty* the court should have applied federal rather than state law in determining the character of the retired pay, it was within the court's jurisdiction to make that characterization, right or wrong. The judgment was therefore not void for want of subject matter jurisdiction.

We do not consider this holding to be in conflict with *Mansell* v. *Mansell*, as we do not agree with Husband that the Supreme Court therein held state courts to be without subject matter jurisdiction where military disability pay is concerned. Rather, the Supreme Court's holding was quite narrow: FUSFSPA does not alter, with regard to nondisposable retired or retainer pay (including the pay at issue herein), the already existing federal statutory structure which, according to *McCarty,* preempts state community property law. To the extent that *Mansell* v. *Mansell* is law of the case herein, it has no impact on the question of subject matter jurisdiction.

### Voidness of Judgment for Act in Excess of Jurisdiction

■ Even though a court has subject matter jurisdiction and jurisdiction over the parties, its actions may be in excess of its jurisdiction. ■ If the superior court acted in excess of its jurisdiction in its 1979 decree, a basis may be demonstrated for vacating the trial court's judgment by direct attack. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 266, p. 664.)

We conclude, however, that the actions of the trial court were not in excess of its jurisdiction. *Estate of Gardiner* (1941) 45 Cal.App.2d 559 [114 P.2d 643] provides that a judgment entered contrary to substantive law does not fall to the level of being in excess of the trial court's jurisdiction. In *Gardiner,* the petitioner sought to vacate a 38-year-old probate decree by arguing the decree was in excess of the jurisdiction of the superior court and thus void. The superior court refused to reopen the judgment, and the appellate court agreed. The weight and authority of the holding of the *Gardiner* court has not diminished with the passage of time. The language of Presiding Justice Moore of the Second District bears repeating: "Where a statute specifically inhibits an act, it is error for the court to do the thing prohibited. But, if the Constitution has conferred upon a court the power to deal with the subject matter and if jurisdiction over the parties has been

acquired pursuant to the exercise of due process, its judgment is valid and it is conclusive, however erroneous, unless reversed on appeal. . . . A decree is void if the court be destitute of jurisdiction, otherwise it is valid and final unless by reason of material error in the application of substantive law it be reversed. Jurisdiction is the power to hear and determine and is not in the least dependent upon the ability of the judge to reason correctly or to act incorruptibly. If the court, in the exercise of its jurisdiction enters a decree affecting property rights contrary to statute, the court is guilty of error of judgment. Neither does such error render void the decree nor does the fact that the error may appear upon the face of the judgment itself indicate its nullity. An erroneous decree which is not void on its face is forever binding and conclusive upon the parties named, upon the status defined, or upon the property described, unless upon motion seasonably made it be vacated or upon appeal it be reversed.

"At times the primary function of the trial court is to determine questions of fact. Even though such findings be utterly contrary to the evidence, the decree is not for that reason void. Similarly the court's defiance or ignorance of an express statute or of the decisions of the courts of last resort does not render its judgment a nullity. The composition of a judgment is derived from an attempt to apply the law to the facts in question. If the court decides the law and the facts both wrong, or the facts right and the law wrong, or the law right and the facts wholly wrong, it is still a final judgment if the time for appeal elapses. The fact that a court shall decide erroneously does not affect the validity or the finality of a judgment any more than to decide correctly. The duty of the court in every controversy or proceeding is to decide right. Such duty implies that the court may decide wrong. Its jurisdiction is not defeated or limited by a wrong decision. To say that its judgment is final when right and interlocutory when wrong would open to attack the myriad of erroneous decrees that have confirmed the fallibility of man since Coke struck the royal shackles from the hands of a cringing judiciary. It would provide an orgy for the prurient army of litigious to the detriment of the peace, security and contentment of society." (45 Cal.App.2d at pp. 562-563.)

Even if Husband were correct in contending the division of his gross retired pay would otherwise have been an act in excess of jurisdiction, he consented to said act when he signed the stipulated property settlement agreement, and he is therefore barred from complaining.[2]

---

[2] In *Mansell I* we noted that the trial court specifically retained jurisdiction over the retirement and disability benefits in its original order: "7. Jurisdiction over the distribution of petitioner's share of the retirement pay and compensation from the Veterans' Administration accrued through respondent's employment with the United States Air Force is expressly reserved by the court." We did not then and we do not now view this statement as a reservation

In *Spahn* v. *Spahn* (1945) 70 Cal.App.2d 791 [162 P.2d 53], the spouses had stipulated to the court's determination of the parties' rights in the various property acquired during marriage, including a certain parcel of real property. The court's written order dividing the marital property ordered that the real property be held in joint tenancy with the right of survival, and further ordered that the husband lease the wife's interest for her lifetime at $100 per month. At the end of the order, the court stated: "By stipulation of both parties as well as counsel, the above order is hereby made." (*Id*. at p. 794.)

After over a year had passed, Mr. Spahn sought to amend the judgment, claiming as to the provisions relating to the real estate that " 'said portion is in excess of the jurisdiction of the court and is void and of no effect.' " (70 Cal.App.2d at p. 794.) The claim was based on his assertion that the real estate was actually his separate property. The motion was denied, and Mr. Spahn appealed from the denial.

The Court of Appeal affirmed, in the process addressing and rejecting several of the arguments made by Husband in the instant case. Chief among them was the contention that the court had no jurisdiction to dispose of anything but community property. The Court of Appeal, after a lengthy survey of case law contrary to the argument, concluded that "whatever the character of the property, whether community or separate, the parties had by their pleadings and stipulation, made its disposition an issue for the court to decide. Under the California cases to which attention has been directed, the trial court then had full jurisdiction to decide such issue." (70 Cal.App.2d at p. 798.)

We conclude, therefore, that Husband's stipulation to division of the gross retirement pay as community property obviates any contention he might make that such division was an act in excess of jurisdiction.

### Mutual Mistake of Law

Husband has contended at various times that the division of the disability pay was the product of a mutual mistake of law in the formulation of the stipulated settlement agreement and the resultant interlocutory and final decrees. This asserted mistake would presumably be that both parties wrongfully believed the disability pay to be divisible community property. Husband contends such a mutual mistake is a basis for the court to vacate and/or modify its final judgment. However, "A mutual mistake which

---

of the issue of allocation of the property but, rather, as a means of overseeing enforcement of the judgment as to payment and inclusion of pay adjustments.

would be sufficient to otherwise set aside a contract is not sufficient to set aside a valid judgment incorporating a marital settlement agreement. ■ Even though a party is mistaken as to the law and the facts, this is an insufficient basis to set aside a valid judgment incorporating a marital settlement agreement, if the party reasonably could have discovered the mistakes." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1069-1070 [202 Cal.Rptr. 116].)

■ Husband contends the parties could not "reasonably . . . have discovered" the asserted mutual mistake of law. This argument, while possessed of a certain facial appeal, depends on the assumption that a mutual mistake of law in fact took place. As shall be demonstrated, no such mistake was made.

In 1979, at the time the parties stipulated to a division of Husband's retirement and disability benefits, the law in California clearly held such payments to be divisible community property. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449].) If the settlement agreement below was drafted with an eye towards *Fithian*, there was no legal "mistake" involved.

*Fithian* and like cases were overruled by the United States Supreme Court in *McCarty* v. *McCarty, supra*, 453 U.S. 210. *McCarty* "held that the federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property." (*Mansell* v. *Mansell, supra*, 490 U.S. at p. 584 [104 L.Ed.2d at p. 682, 109 S.Ct. at p. 2026].) However, the California courts have consistently refused to apply *McCarty* retroactively.

"To permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to reopen old wounds and create new ones. There is no guarantee that the nonservice member spouse would have assets sufficient to reimburse the service member for that portion of the pension rights which had previously been an awarded share of community property. Substantial hardship would result in cases where the nonmember relied on the property settlement in converting his or her share into nonliquid assets. Moreover, a reallocation of property interests would likely constitute sufficient 'changed circumstances' to trigger a second round of relitigation involving spousal support awards. [Citations.] We also note the immense burden on the administration of justice in our civil courts were such relitigation permitted. Under these circumstances, we conclude that a fully retroactive application of *McCarty* would be inimical to the principles of equity and fairness which underlie this state's family law system. Finding nothing in the nature or rationale of the

*McCarty* decision which mandates a retroactive effect, we hold *McCarty* is inapplicable where the property rights in the military pension have been determined by a dissolution judgment which became final before the filing of the United States Supreme Court's opinion." (*In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 380 [177 Cal.Rptr. 380], fn. omitted. See also, e.g., *In re Marriage of Camp* (1983) 142 Cal.App.3d 217 [191 Cal.Rptr. 45]; *In re Marriage of Fellers* (1981) 125 Cal.App.3d 254 [178 Cal.Rptr. 35]; *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17 [176 Cal.Rptr. 274]; *In re Marriage of McGhee* (1982) 131 Cal.App.3d 408 [182 Cal.Rptr. 456].)

Since *McCarty,* a 1981 decision, was not to be retroactively applied to judgments final prior to the date of the decision, *McCarty* had and has no effect on the 1979 final judgment below.

In 1982, in "direct response" to *McCarty* (*Mansell* v. *Mansell, supra*, 490 U.S. at p. 584 [104 L.Ed.2d at p. 682, 109 S.Ct. at p. 2026]), Congress passed FUSFSPA. FUSFSPA made no direct reference to the divisibility or nondivisibility of the property at issue here, military disability pay; rather, it merely stated that "a court may treat disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C. § 1408(c)(1).) While this "affirmative grant of authority" (490 U.S. at p. 588 [104 L.Ed.2d at p. 684, 109 S.Ct. at p. 2028]) apparently overruled *McCarty* as regards *disposable* retired or retainer pay, it did nothing to change *McCarty*'s effect on *non*-disposable pay, including Husband's disability pay; such pay is, under *McCarty,* the separate property of the retired service person.

That FUSFSPA made no change in the law controlling *non*-disposable retired or retainer pay (including the pay at issue here) is manifest from the manner in which the United States Supreme Court framed and treated the argument in this case: "Mrs. Mansell views [FUSFSPA] as a complete congressional rejection of *McCarty*'s holding that state law is pre-empted; she reads the Act as restoring to state courts all pre-*McCarty* authority. Major Mansell, supported by the Solicitor General, argues that [FUSFSPA] is only a partial rejection of the *McCarty* rule that federal law preempts state law regarding military retirement pay." (*Mansell* v. *Mansell, supra*, 490 U.S. at p. 588 [104 L.Ed.2d at p. 685, 109 S.Ct. at p. 2028], fn. omitted.)

Having thus framed the question, the court answered it by noting that "under [FUSFSPA's] plain and precise language, state courts . . . have not been granted the authority to treat total retired pay as community property." (490 U.S. at p. 589 [104 L.Ed.2d at p. 685, 109 S.Ct. at p. 2028].) In

other words, Husband was correct in arguing that FUSFSPA was merely a "partial rejection" of *McCarty*. Other than the authority expressly conveyed by FUSFSPA, *McCarty* remained determinative of the limits of state authority to characterize military retirement benefits.

Clearly, then, FUSFSPA itself effected no change to the parties' rights regarding the disability pay. Under *McCarty*, disability pay was not community property and FUSFSPA did not change *McCarty*'s characterization. Husband must therefore rely on *McCarty* as being the postjudgment change in law proving the mutual mistake of law asserted. As we have already observed, however, the California courts, including this one, have overwhelmingly found *McCarty* to have no effect on judgments final prior to its 1981 filing date.

■ "[A] mistake of law is when a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts." (*Hodge Sheet Metal Products* v. *Palm Springs Riviera Hotel* (1961) 189 Cal.App.2d 653, 656 [11 Cal.Rptr. 435]; see *Baratti* v. *Baratti* (1952) 109 Cal.App.2d 917, 921 [242 P.2d 22].) ■ Here the parties' belief at the time the interlocutory and final decrees were entered was that military disability pay was divisible community property. The belief was, at that time, correct. The mere fact that in 1982 or today a court might be required to reach a different result due to intervening interpretations of the law does not mean that, in 1979, Husband and Wife were operating under a mistaken impression of the law as it was applied at that time. A postjudgment, nonretroactive reinterpretation of the law is not a basis for disturbing a final judgment. (See, e.g., *Slater* v. *Blackwood* (1975) 15 Cal.3d 791 [126 Cal.Rptr. 225, 543 P.2d 593]; *Zeppi* v. *California* (1962) 203 Cal.App.2d 386 [21 Cal.Rptr. 534].) In short, there was no mutual mistake of law that would support an attack on the judgment.

*Applicability of California Rules of Court, Rule 28\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Effect of United States Supreme Court Opinion on Conclusions Reached in Mansell I and the Instant Case*

■ Although the *Mansell I* opinion did not employ the term "res judicata," the question before this court at the time, and the question before it

---

\*See footnote, *ante*, page 219.

now, was whether the superior court had erred in denying Husband's motion for modification of a final judgment. It was that question which we answered in the negative, relying on *Casas* v. *Thompson* to find that regardless of when the judgment was entered, the court had the power and jurisdiction to divide the community property. The essence of our holding in *Mansell I* was that there was an insufficient showing to disturb a final judgment.

We recognize the United States Supreme Court did not construe this to be the basis of the decision in *Mansell I.* In footnote 5 of *Mansell* v. *Mansell,* the Supreme Court states that, "The California Court of Appeal, however, decided that it was appropriate, under California law, to reopen the settlement and reach the federal question." (490 U.S. at p. 586, fn. 5 [104 L.Ed.2d at p. 684, 109 S.Ct. at p. 2027].) As we have noted, under California law, there was, and is, no basis to reopen the settlement and reach the federal question. However, we should not and do not leave unsaid the conclusion that the ambiguity of our language may have led to the inference drawn by our high court. We can only say we did not do what we could not do. We did not "reopen the settlement"; indeed, we addressed the federal question *only* to demonstrate there was no basis for reopening the settlement. This determination necessarily was one of state law, although our rationale for reaching it involved resolution of a federal question.

As we have already stated, the propriety of the superior court's refusal to exercise its powers in equity to reopen the judgment was the only question before this court. Our prior opinion should be read in that light. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, . . ." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Likewise, Husband, in briefing following remand, appears to suggest our statement that, "This court must therefore reach the merits of the appeal in this case" indicated that the *Mansell I* opinion directly addressed the merits of the 1979 judgment. As we have stated, it did not. Wife correctly notes that, by reaching "the merits of the appeal," we reached only the question of whether the lower court's denial of Husband's 1983 motion for modification was proper. Our opinion in *Mansell I* scrutinized the 1979 proceedings for the sole purpose of deciding whether an error had occurred that was of such a nature as would have justified granting the motion for modification; *Casas* resolved that question without further inquiry.

The trial court's denial of the motion to vacate and modify the judgment herein is affirmed. Wife to receive costs.

Stone (W. A.), Acting P. J., and Brown (G. A.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 29, 1990.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.