CARLSON, Presiding Justice,
for the Court:
¶ 1. James Mallard and Tonya Mallard (now Tonya Mallard Burkart)[1] were divorced on April 25, 2001. Incorporated into the Final Judgment of Divorce was the Child Custody and Support and Property Settlement Agreement executed by the parties. A significant portion of the financial settlement that Burkart received in the property settlement agreement consisted of forty percent of Mallard’s “disposable military retirement pay” for ten years. Following the divorce, Mallard elected to adopt a sixty-percent disability rating as part of his retirement pay. Mallard did not provide any of these disability benefits to Burkart. When Mallard filed a Petition for Modification of Judgment of Divorce in chancery court pursuant to child-support and custody matters not at issue on this appeal, Burkart filed a counter-petition for contempt, asserting that Mallard had structured his retirement in such a way as to defeat her forty-percent interest in the total retirement pay. The chancellor determined that Burkart was entitled to forty percent of the disability benefits, but he declined to find Mallard in contempt. From this judgment, Mallard appeals to us.
¶ 2. Today, we find that, since federal law preempts state law, state courts are precluded from allocating military disability benefits to a nonmilitary spouse; therefore, we reverse and remand the case for further proceedings consistent with this opinion.
FACTS AND PROCEEDINGS IN THE CHANCERY COURT
¶ 3. On January 5, 2001, Tonya Mallard and James Mallard filed a joint complaint for divorce in the Lamar County Chancery Court on the grounds of irreconcilable differences. On April 25, 2001, a final judgment of divorce was entered, ratifying and incorporating the parties’ Custody and Support and Property Settlement Agreement. The property settlement agreement incorporated into the judgment of divorce provided, inter alia, as follows:
Pursuant to the Uniform Services Former Spouses Protection Act (“USFS-PA”), 10 U.S.C. § 1408, the Court makes the finding followings of fact:
(A) That the Husband is currently an active duty service member in the United States Air Force.
(B) That Husband’s rights under the Soldiers and Sailors Civil Relief Act have been observed in these proceedings.
(C) That Wife and Husband were married for at least ten (10) years during which Husband performed at least ten (10) years creditable service, making Wife eligible for involuntary military deductions under The USFSPA at such time [a]s Hus *1267 band becomes entitled to retirement pay.
(D) Wife is awarded 40% of Husband’s disposable military retired pay for ten (10) years unconditional. Wife shall continue to receive 40% of Husband’s disposable military retired pay after ten (10) years if she does not remarry or has not lived with someone for a cumulative of sixty (60) days. Payments shall continue until Wife remarries or lives with someone for a cumulative of sixty (60) days upon which time payments shall cease. It is Wife’s responsibility to notify the Defense Finance and Accounting Service and Husband of any change of eligibility for payment.
(E) The Husband voluntarily consents to the exercise of jurisdiction to the State of Mississippi, County of Forrest for division [of] military retired pay.
(Emphasis added.)
¶ 4. Mallard and Burkart married on May 24, 1980, and Mallard was on active service with the United States Air Force for the entire period of the marriage. Following the divorce, Mallard retired from the military in October 2002, without any disability benefits. At some point prior to his retirement, Mallard sustained a back injury and a herniated disk. The record does not reveal whether this injury occurred before or after the divorce. Mallard received a partial disability rating of sixty percent in June 2008, which was backdated to his retirement date of October, 2002.
¶ 5. The percentage of a disability rating is deducted from retirement pay on a dollar for dollar basis. 38 U.S.C. § 5305 (2004). Mallard testified that, after going on disability, he sent Burkart monthly payments amounting to forty percent of only the portion of his retirement which did not consist of disability benefits. The record reflects that, before going on disability, Mallard sent Burkart monthly payments of $571, but that, once the disability rating took effect, the monthly payments dropped to between $80 and $120 per month.[2]
¶ 6. On October 4, 2006, Mallard filed a Petition for Modification of Judgment of Divorce, pursuant to child support and custody matters not at issue on this appeal. An amended petition was filed on January 18, 2007. On April 3, 2007, Burkart filed an Answer and Counter-Petition, asserting, among other things, that Mallard had structured his retirement from the Air Force in such a way as to defeat her forty-percent interest in the retirement pay. Trial was held on both Mallard’s amended petition and Burkart’s counter-petition on November 12, 2009, and the chancellor’s Findings of Facts, Conclusions of Law, and Final Judgment were entered on November 19, 2009.
¶7. The chancellor ruled in favor of Burkart. Pertinent to the instant appeal, the chancellor held that Mallard unilaterally had breached the settlement by going on disability and denying any portion of the disability benefits to Burkart. Mallard claimed that, under U.S.Code Section 1408 and the U.S. Supreme Court case of Man-sell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), federal law preempts state law, thus precluding the state trial court from being able to award those monies. The chancellor found that “there does not seem to be any Mississippi [caselaw] that considers the question at hand, [but] the Court finds most persuasive, a 2001 opinion rendered by the Su *1268 preme Court of Tennessee that appears to be directly on point.”[3] Applying the Tennessee rule, the chancellor rejected Mallard’s argument, determining that Bur-kart’s interest in Mallard’s total retirement pay, including his disability benefits, had vested at the time of the entry of the final judgment of divorce, which adopted and incorporated by reference the attached property-settlement agreement.
¶ 8. The chancellor held that Mallard was liable to Burkart for $21,213.57, reflecting the difference between what Bur-kart would have received had Mallard not gone on disability and what she actually had received, plus six percent interest. The chancellor declined to hold Mallard in contempt, since he was using military rules and regulations available to all retirees. Aggrieved, Mallard has appealed to this Court.
DISCUSSION
¶ 9. Mallard couches the sole issue before us as follows:
Whether the chancellor erred in requiring [Mallard] to compensate [Burkart] for the reduction in her payments for her share of [Mallard’s] military retirement benefits previously awarded to her as marital property and subsequently reduced due to [Mallard’s] post-divorce waiver of military retirement benefits in exchange for a corresponding amount of veterans disability benefits!.]
On the other hand, Burkart couches the sole issue before us as follows:
W[he]ther [the][c]hancellor erred in the determination of facts by clear and convincing evidence and the application of the [l]aw in holding that [Mallard] was required to compensate [Burkart] in an amount representative of her share of [Mallard’s] military retirement previously awarded to her as marital property in a Final Judgment and Property Settlement Agreement where said retirement benefits were unilaterally reduced due to [Mallard’s] post-divorce and post-retirement actions of waiver of his military retirement benefits in exchange for a corresponding amount of tax free veterans disability benefits.
Considering the issue as presented to us by the parties, we reword the issue by stating that today we must determine whether federal law preempts state law, thus precluding state courts from treating as property divisible upon divorce, military retirement pay waived by the military spouse in order to receive military [veterans’] disability benefits.
¶ 10. “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Duncan v. Duncan, 774 So.2d 418, 419 (Miss.2000) (citing Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (Miss.1999)). “Under the standard of review utilized to review a chancery court’s findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the court on appeal unless its findings were manifestly wrong.” Duncan, 774 So.2d at 419 (citations omitted). “As to matters of law, however, a different standard applies. In that case, our review is de novo, and if we determine that the chancellor applied an incorrect legal standard, we must reverse.” Carter v. Carter, 735 So.2d 1109, 1114 (Miss.Ct.App.1999) *1269 (citing Morreale v. Morreale, 646 So.2d 1264,1267 (Miss.1994)).
¶ 11. We agree with the chancellor and both parties that the present question is one of first impression in Mississippi. Thus, we look to other jurisdictions for guidance.
¶ 12. We start with the United States Supreme Court’s decision in McCarty v. McCarty, 45B U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). McCarty is a case from a community-property state. The Court reasoned that the federal statutes then in effect prevented state courts from treating military retirement pay as community property, finding that it was clear Congress intended that military retirement benefits could be paid only to the veteran and no one else. McCarty, 458 U.S. at 228,101 S.Ct. at 2739. In reaching this conclusion, the McCarty Court relied heavily on Congress’ refusal to pass legislation that would have allowed former, nonmilitary spouses to garnish military retirement pay to satisfy property settlements. McCarty, 453 U.S. at 228-232,101 S.Ct. at 2739-2741. Likewise, in McCarty, the Court stated that if Congress felt that the decision in McCarty was onerous for former spouses of members of the military, Congress could change the law.
¶ 13. In response to McCarty, Congress did just that when it enacted the Former Spouses’ Protection Act, now known as the Uniform Services Former Spouses Protection Act (USFSPA). In Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), the United States Supreme Court had an occasion to address the USFSPA. The Supreme Court succinctly stated the issue as follows:
In this appeal, we decide whether state courts, consistent with the [USFSPA], may treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans’ disability benefits. We hold that they may not.[4]
Mansell, 490 U.S. at 583,109 S.Ct. at 2025. Under USFSPA, “disposable retired or retainer pay” is defined as “the total monthly retired or retainer pay to which a military member is entitled,” less certain specified deductions; and among the amounts which must be deducted from the total pay are any amounts which may be waived in order to receive disability benefits. Mansell, 490 U.S. at 584-85, 109 S.Ct. at 2026.
¶ 14. We briefly state the facts in Man-sell. At the time of the divorce, the military spouse received military retirement pay as well as disability benefits as a result of a waiver of a portion of the retirement pay. The property-settlement agreement provided, inter alia, that the military spouse would pay the nonmilitary spouse fifty percent of his (military spouse’s) retirement pay, including that portion of retirement pay waived so that the military spouse could receive disability benefits.[5] A few years after the divorce, the military spouse asked the state trial court to modify the divorce decree by removing the provision requiring him to share his total retirement pay with the *1270 nonmilitary spouse. The trial court denied the military spouse’s request. Mansell, 490 U.S. at 585-86, 109 S.Ct. at 2027. Appeals followed, eventually resulting in the Supreme Court of California denying any relief to the military spouse. Mansell, 490 U.S. at 587, 109 S.Ct. at 2027-28.
¶ 15. But the United States Supreme Court, in the end, reasoned that, while state courts appropriately could divide disposable retired pay in divorce proceedings, this authority did not extend to dividing “total retired pay.” Mansell, 490 U.S. at 589,109 S.Ct. at 2029. The Mansell Court concluded:
We realize that reading the statute literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.
For the reasons stated above, we hold that the Former Spouses’ Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans’ disability benefits.
Mansell, 490 U.S. at 594-95, 109 S.Ct. at 2032.
¶ 16. Turning now to decisions of state courts in our sister states, the history of the authority of state trial courts to treat military retirement pay and disability benefits as property subject to division upon divorce has been well laid out by the Vermont Supreme Court. Since the question of preemption that the Vermont court considered in the opinion below is the sole issue on appeal in the present case, we include that court’s summary here:
The Supremacy Clause of the United States Constitution proclaims federal law to be “the supreme Law of the Land.” Art. VI, cl. 2. Consequently, federal law can preempt state law whenever Congress explicitly states that it is preempting state law or implicitly preempts state law by occupying an entire field of regulation or passing laws that conflict with state law. Mich. Canners & Freezers Ass’n v. Agrie. MJctg. & Bargaining Bd., 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984). In 1981, the United States Supreme Court held that federal law prevented state courts from treating any military retirement benefits as community property. McCarty v. McCarty, 453 U.S. 210, 223, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), superseded by statute, 10 U.S.C. 1408. According to the McCarty Court, Congress intended all military retirement benefits to go directly to military ser-vieemembers and not to their former spouses. Id. at 228, 101 S.Ct. 2728. The following year, Congress directly responded to McCarty by passing the Uniformed Services Former Spouses’ Protection Act 62 (USFSPA), which authorized state courts to treat disposable retirement benefits as community property, 10 U.S.C. § 1408(c)(1), but which also specifically exempted disability benefits from the definition of disposable retirement benefits, id. § 1408(a)(4)(B). The Supreme Court interpreted these provisions of the USFSPA in Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). The Mansell Court noted that although federal law rarely displaces state law in domestic relations matters, this was “one of those rare instances” where state law was preempted. Id. at 587, 109 S.Ct. 2023. The Mansell Court then held that the McCarty decision “completely pre-empt- *1271 ed the application of state community property law to military retirement pay,” and the states therefore needed “an affirmative grant of authority ... to treat military retirement pay as community property.” Id. at 588, 109 S.Ct. 2023. The Court concluded that the USFSPA provided this grant of authority to states with respect to disposable retirement benefits, but not with respect to disability benefits — the Court explicitly held that the state courts are without power “to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans’ disability benefits.” Id. at 595, 109 S.Ct. [2032].
Youngbluth v. Yowngbluth, 188 Vt. 53, 61-62, 6 A.3d 677, 682-83 (2010).
¶ 17. We acknowledge that in today’s case, Burkart asserts that Mansell is inapplicable, since the Mansell Court addressed the issue of the inability of state courts to treat as marital property the portion of military retirement pay that has been waived, at the time of divorce, in order to receive veterans’ disability payments.
¶ 18. Several other states have addressed whether state, trial courts have any authority to distribute disability benefits, where the military spouse goes on disability after the divorce property settlement is finalized. There is a split of authority on this question, and no clear majority view. The chancellor in the instant case followed the holding of the Tennessee Supreme Court in Johnson, 37 S.W.3d at 897, and Hillyer v. Hillyer, 59 S.W.3d 118 (Tenn.Ct.App.2001). The Tennessee Supreme Court held in Johnson that “‘retirement benefits’ has a usual, natural, and ordinary meaning .... the term comprehensively references all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military.”[6]
¶ 19. Furthermore, in Tennessee, “[a]ny act of the military spouse that unilaterally decreases the non-military spouse’s vested interest is an impermissible modification of a division of marital property and a violation of the final decree of divorce.” Johnson, 37 S.W.3d at 894. This holding, applied to military disability benefits, entails that “interest in [all retirement benefits, including disability] vest[s] as of the date of entry of the court’s decree and [can] not be unilaterally altered.” Id. at 897. In Hillyer, where the trial court had awarded the nonmilitary spouse forty percent of the “gross military retirement benefits,” the Tennessee Court of Appeals held that “at the entry of the divorce decree [the nonmilitary spouse] obtained a vested right to forty per cent (40%) of Mr. Hillyer’s ‘gross military retirement benefits’ and is entitled to enforce that decree.” Hillyer, 59 S.W.3d at 123.
¶ 20. In today’s case, Mallard’s theory before the chancellor relied heavily on a contrary case, Halstead v. Halstead, 164 N.CApp. 543, 550, 596 S.E.2d 353, 357-58 *1272 (N.C.Ct.App.2004). In that case, the North Carolina Court of Appeals held that a trial court “could not substitute its own definition of military retired pay in lieu of the definition of disposable retirement pay as defined by the Congress[,]” because it was precluded from doing so by the United States Code and by federal precedent. The Vermont Supreme Court found similarly that “at least when the original property division order states an exact percentage and contains no indemnity provision— a former spouse cannot use an enforcement proceeding to receive an increased percentage to offset the military service-member’s subsequent application and receipt of disability benefits.” Youngbluth, 188 Vt. at 68, 6 A.3d 677.[7] We are in accord with the analyses of the Halstead and Youngbluth courts, which we find correctly interpreted the law on this matter.
¶ 21. Whatever the equities may be, state law is preempted by federal law, and thus, state courts are precluded from ordering distribution of military disability benefits contrary to federal law. The Uniformed Services Former Spouses’ Protection Act (USFSPA) authorizes state courts to treat disposable retirement benefits as community property. 10 U.S.C. § 1408(c)(1) (2009). “Disposable retired pay” is defined as “the total monthly retired pay to which a member is entitled,” less the authorized deductions. 10 U.S.C. § 1408(a)(4) (2009). Among the amounts “deducted from the retired pay” are disability benefits. Id. In Mansell, the United States Supreme Court held that “under the [USFSPA]’s plain and precise language, state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property.” Mansell, 490 U.S. at 589, 109 S.Ct. 2023. More specifically, “the Former Spouses’ Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans’ disability benefits.” Id. at 594-95, 109 S.Ct. 2023.
¶ 22. We find the holding of Mansell to be both specific and clear. Some state courts may have established “creative solutions” around the literal meaning of the Mansell holding. See Smith, 56 Cal. Rptr.3d at 345. However, in our judgment, we are constrained to find that Mansell applies even though the “harsh reality of this holding is that former spouses ... can, without their consent, be denied a fair share of their ex-spouse’s military retirement pay simply because [the military spouse] elects to increase his after-tax income by converting a portion of that pay into disability benefits.” Mansell, 490 U.S. at 595, 109 S.Ct. 2023 (O’Connor, J., dissenting). Accord, Davis v. Davis, 111 S.W.2d 230, 232 (Ky.1989) (holding that the USFSPA “evidences a clear intent on the part of Congress to preempt and prevent division of VA benefits as marital property.”)[8]
*1273 CONCLUSION
¶ 28. Federal law preempts state law, thus precluding state courts from distributing military disability benefits to the nonmilitary spouse. We therefore find that the chancellor erred when holding that Mallard was liable to Burkart for $21,213.57, reflecting the difference between what Burkart would have received had Mallard not gone on disability and what she actually received, plus six percent interest. Accordingly, we reverse the Lamar County Chancery Court’s judgment as to this distribution, and remand this case for further proceedings consistent with this opinion.
¶ 24. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. In the record we find Tonya Mallard Bur-kart’s name spelled as “Burkart” and "Burk-hart." But we note that, in signing her name to post-divorce pleadings, she signed as "Bur-kart.” Thus, we will use her spelling throughout this opinion.

. Even $120 is considerably less than forty percent of $571, but we find nothing in the record or in the parties’ briefs to explain this discrepancy.

. Citing Johnson v. Johnson, 37 S.W.3d 892, 897 (Tenn.2001), for the proposition that "when a [marital dissolution agreement] divides military retirement benefits, the nonmilitary spouse has a vested interest in his or her portion of those benefits as of the date of the court’s decree.” Further discussion of this case appears infra.

. In our discussion, supra, we used this language from the Supreme Court to rephrase the issue in today's case.

. There is a reason this procedure of waiver of a portion of retirement pay in order to receive disability benefits is so popular among military retirees. Under the USFSPA, in order to prevent double-dipping, a military retiree may receive disability benefits, but only to the extent that the retiree waives a corresponding amount of his or her military retirement pay. Since disability benefits are exempt from federal, state and local taxation, military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Mansell, 490 U.S. at 583-84, 109 S.Ct. at 2026.

. Tennessee is not the only state to have adopted such a broad reading of the term "retirement benefits” or "retirement pay.” See, e.g., In re Marriage of Krempin, 70 Cal. App.4th 1008, 83 Cal.Rptr.2d 134 (Cal.App. 1 Dist.1999); In re Marriage of Gaddis, 191 Ariz. 467, 957 P.2d 1010 (Ariz.App.Div.1997); Dexter v. Dexter, 105 Md.App. 678, 661 A.2d 171 (Md.App. 1995); In re Marriage of Strassner, 895 S.W.2d 614 (Mo.App. E.D.1995); Owen v. Owen, 14 Va.App. 623, 419 S.E.2d 267 (Va.App. 1992). One California court has noted of these and like opinions that “[t]he Mansell holding led many state courts to look for creative solutions to prevent a former spouse from losing his or her interest in the military retirement as the result of unilateral action on the part of the military spouse.” In re Marriage of Smith, 148 Cal.App.4th 1115, 56 Cal.Rptr.3d 341, 345 (Cal.App. 6 Dist. 2007).

. Several other cases are in accord with this holding. See, e.g., Hagen v. Hagen, 282 S.W.3d 899, 905 (Tex.2009); Thomas v. Piorkwski, 286 S.W.3d 662, 669 (Tex.App.Corpus Christi 2009); Morgan v. Morgan, 249 S.W.3d 226, 231-32 (Mo.App. W.D.2008); Troxell v. Troxell, 28 P.3d 1169, 1171-72 (Olda.Civ.App. Div. 1 2001); Ex Parte Billeck, 777 So.2d 105, 109 (Ala.2000); Ashley v. Ashley, 337 Ark. 362, 990 S.W.2d 507, 508-09 (Ark.1999); Robinson v. Robinson, 647 So.2d 160, 161 (Fla.App. 1 Dist.1994) (per curiam); Clauson v. Clauson, 831 P.2d 1257, 1264 (Alaska 1992); Wright v. Wright, 594 So.2d 1139, 1142 (La.App. 3 Cir.1992); Moon v. Moon, 795 S.W.2d 511, 514 & n. 2 (Mo.App. E.D. 1990); Jones v. Jones, 7 Haw.App. 496, 780 P.2d 581, 584 (Haw.App. 1989).

. We note that the equities now may be more balanced than they were at the time of Man-sell and Hillyer, since Congress in 2003 *1273 passed legislation, which became effective on January 1, 2004, allowing concurrent receipt of both retired pay and disability benefits. 10 U.S.C. § 1414(2012). This is known as "concurrent retirement and disability pay” ("CRDP”). This legislation provides, in some cases, for a ten-year phased elimination of the disability offset. Since CRDP payments are taxable and divisible with a former spouse, much of the perceived inequity of the impossibility of dividing disability benefits may be offset. Mallard has been receiving CRDP payments, which apparently has provided at least some relief to Burkart; i.e., Burkart's monthly payments have risen from $80 to, at the time of trial, $603, a higher payment than Burkart was receiving before Mallard went on disability.
Although this is comforting, we hold that, even where CRDP is not a factor, and the nonmilitary spouse receives no compensation for the funds "lost” to the military spouse's disability benefits, federal law still preempts state law, thus precluding state courts from according any relief in the face of the clearly expressed will of Congress and the holding of the U.S. Supreme Court in Mansell, 490 U.S. at 595, 109 S.Ct. 2023.