# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00700-COA

**GEORGE F. MANLEY** APPELLANT

**v.**

**JULIE I. MANLEY** APPELLEE

DATE OF JUDGMENT:              05/27/2021
TRIAL JUDGE:                   HON. CHARLES E. SMITH
COURT FROM WHICH APPEALED:     CLARKE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       JAMES A. WILLIAMS
                               JOSEPH ANTHONY DENSON
ATTORNEY FOR APPELLEE:         STEPHEN PAUL WILSON
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 05/02/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.    George Manley appeals from the judgment of the Clarke County Chancery Court granting Julie Manley an award against George in the amount of $65,377.60 for unpaid retirement pay and $10,200 for child support arrearage. We find that the award for unpaid retirement pay was not an abuse of discretion according to the terms used in the parties' settlement agreement. We also find no error in the determination of child support arrearage and affirm as to that issue.  Thus, we affirm the judgment of the chancery court.

## PROCEDURAL HISTORY

¶2.    On November 5, 2012, the Clarke County Chancery Court entered a judgment granting George Manley and Julie Manley a divorce on the statutory ground of irreconcilable

differences. A property settlement agreement (PSA) executed by the parties was incorporated into the divorce judgment.

¶3.     Thereafter, Julie filed a motion on August 26, 2019, requesting that the chancery court cite George for contempt.[1] Julie claimed, "Pursuant to Paragraph 14 of the [PSA], George was to pay one-half of all retirement pay each month. However, he has not done so." She also alleged that "Paragraph 4 of the [PSA] provided that [George] shall pay . . . child support, to be adjusted annually, upon presentation of [George's] tax return to [Julie]," but "George Manley has not paid child support since March 2019. Further, for the year 2019, he failed to provide any documentation as to his prior year's income." Julie requested that the court hold George in contempt of the parties' divorce judgment and order him to pay past-due amounts. She also requested that the chancery court "take such further measures as would be necessary to punish [George] and/or ensure his compliance with the Judgment for Divorce."

¶4.     According to the record, the chancery court heard the petition on three separate days that spanned several months. On March 25, 2021, the court entered its final judgment in favor of Julie and found George in civil contempt for failing to pay Julie in compliance with the terms of the PSA.[2] The court determined that "child support arrearage exists in the

_____

[1] The record on appeal shows that Julie's motion dated August 26, 2019, initiated the second contempt proceeding against George. Julie filed her first motion to cite George for contempt on September 22, 2014. The appellate record does not contain Julie's first motion for contempt.

[2] The court's order stated, "Judgment is hereby issued in favor of Julie Manley and against George F. Manley in the total amount of $80,561.45."

2

amount of $10,200.00 for all support through March 20, 2021," and "that George F. Manley owes $65,377.60 in unpaid retirement pay that is due and owing under Paragraph 14 of the [PSA] incorporated into the Judgment of Divorce." Aggrieved, George appeals.

## STANDARD OF REVIEW

¶5. This Court "afford[s] chancellors much discretion in our review of domestic-relations cases." *King v. King*, 130 So. 3d 166, 167 (¶3) (Miss. Ct. App. 2014). "If supported by substantial evidence, [the] chancellor's factual findings will not be disturbed unless 'the chancellor abused [his or her] discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.'" *Wooten v. Wooten*, 333 So. 3d 610, 614-15 (¶9) (Miss. Ct. App. 2022) (quoting *Varnell v. Rogers*, 198 So. 3d 1278, 1280 (¶7) (Miss. Ct. App. 2016)). But "[f]or questions of law, the standard of review is de novo." *Ravenstein v. Ravenstein*, 167 So. 3d 210, 216 (¶8) (Miss. 2014). Under the de novo standard of review, "if we determine that the chancellor applied an incorrect legal standard, we must reverse." *Mallard v. Burkart*, 95 So. 3d 1264, 1268 (¶10) (Miss. 2012).

## DISCUSSION

¶6. George raises two issues on appeal: (1) whether the court erred in finding that George failed to comply with his obligation to divide and distribute 50% of his military retirement pay to Julie, and (2) whether the court erred in finding that George owed Julie payment for his child support obligations.

### I.      Obligation to Pay 50% of George's Total Military Retirement Pay

3

¶7. The first issue raised is whether the court erred when it found that George failed to comply with the parties' PSA by failing to pay Julie 50% of his retirement pay. In deciding this first assignment of error, we must begin by reviewing the terms of the PSA. "[P]roperty settlement agreements are contractual obligations"[;] thus, "[t]he provisions of a property-settlement agreement executed prior to the dissolution of marriage must be interpreted by courts as any other contract."[3] *McCall v. McCall*, No. 2017-CA-01203-COA, 2019 WL 350628, at *4 (¶20) (Miss. Ct. App. Jan. 29, 2019) (citing *In re Hodges*, 807 So. 2d 438, 442, 445 (¶¶20, 26) (Miss. 2002)). Section 14 of the parties' PSA, which was incorporated into and made a part of the parties' November 2012 divorce decree, provides in relevant part:

> RETIREMENT. George and Julie shall equally divide (50/50) George's military retirement. It is further agreed and understood that George's retirement pay is $1,643.00 at the time of this agreement. It is further agreed and understood that the actual estimated monthly distribution to each party shall be $821.50, but in all instances payment to Julie shall be exactly 50% of the retirement pay.

¶8. George argues that the "retirement pay" devised by the PSA is not based upon his total retirement income or gross pay and does not include the pay he receives for disability benefits. He contends that the specific amounts listed in the PSA were simply estimates as of the time the agreement was signed. According to George, those amounts were subject to

---

[3] "[A] true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." *McCall*, 2019 WL 350628, at *4 (¶20) (citing *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986)).

change and Julie was only entitled to 50% of whatever amount of retired pay he received. To support his position, George points to the specific wording of the PSA that states, "but in all instances payment to Julie shall be exactly 50% of the retirement pay." Conversely, Julie argues that the parties' intent under the PSA was to equally divide the total amount of George's military retirement payments, otherwise referred to as his "gross pay." She points out that the PSA specifically stated that his retirement pay was $1,643 and that her share of that pay was $821.50. She claims she is entitled to $821.50 regardless of the source from which the retirement pay is drawn.

¶9.     From the context of the trial transcripts, the record shows that following the conclusion of the hearings, the chancery court found that the "retirement pay" provision required the parties to equally divide George's total military retirement pay and that the amount of George's total monthly retirement pay at the time of the agreement was $1,643. Further, the chancellor found that Julie was entitled to the monthly amount of $821.50 in retirement pay and that George was liable to Julie for payment of past-due obligations reflecting the difference between the $821.50 amount Julie should have received and the amounts she actually received each month from George.

¶10.    The transcripts from trial indicate that the chancery court focused on George's total gross military retirement pay and the total amount of income George would have received if he had not signed the VA waiver. The court even went as far as pointing to George's November 2012 "Retiree Account Statement" from the "Defense Finance and Accounting

5

Service" and identifying that George's total monthly gross pay was listed as $1,643, which was consistent with the amount specifically confirmed by George in the PSA when he agreed Julie was entitled to $821.50 per month.

¶11.    Reviewing George's November 2012 Retiree Account Statement, the document shows that at the time of the parties' PSA and divorce, George's monthly "gross pay" was $1,643, which included a "VA Waiver" for disability pay in the amount of $874.  Part of George's "gross pay" was paid to him as VA disability pay because George had executed a "VA Waiver," waiving part of his gross retirement pay to receive an equal amount of VA disability pay. George expressly represented to Julie and the chancery court that his monthly "retirement pay [was] $1,643.00 at the time of [the PSA]," and the record clearly shows that this figure was exactly equal to and intended to mean George's "gross pay."

¶12.    Under the terms of the PSA as written, we are constrained to find the term "retirement pay," as agreed to by the parties in their PSA, meant George's "gross pay," including his disability pay from his VA Waiver. *See McCall*, 2019 WL 350628, at *4 (¶20). Thus, the chancery court was not in error for awarding Julie a judgment for the retirement pay that George had failed to pay to her pursuant to the specific terms of the PSA agreed to by the parties.[4]

---

[4] Julie was likely entitled to more than she was awarded because George's gross pay increased over time to $1,862 per month by December 2020.  However, Julie requested and received a judgment based on George's monthly gross pay at the time of the divorce ($1,643).

¶13. The separate opinion properly points out that there is a federal statute relevant to the distribution of various forms of military retirement pay, 10 U.S.C. § 1408, and United States Supreme Court precedent that interprets its provisions. Because we recognize that "[t]his Court does not have the authority to overrule or ignore Supreme Court precedent[,]" *Roley v. Roley*, 329 So. 3d 473, 492 (¶67) (Miss. Ct. App. 2021), we note our awareness of the ruling in *Mallard*, which held that "state courts are precluded from ordering distribution of military disability benefits contrary to federal law." *Mallard*, 95 So. 3d at 1266 (¶21).

¶14. Although we do not disagree with the separate opinion's discussion of the general substance of federal statutes and precedents, it is important to note from the outset of this discussion that George has never argued—either in the chancery court or on appeal—that federal law renders his obligations under the provisions of the PSA void or unenforceable. "It is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal." *Adams v. Bd. of Supervisors of Union Cnty.*, 177 Miss. 403, 170 So. 684, 685 (1936). A "trial judge cannot be put in error on a matter which was never presented to him for decision." *Methodist Hosps. of Memphis v. Guardianship of Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988). Additionally, as a general rule, this Court will not "address an issue that has not been briefed on appeal." *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (¶27) (Miss. 2018). Because George did not raise any issue of federal law in the trial court or on appeal, "we will not act as an advocate for one party to an appeal" by raising the issue sua sponte. *Id.* (quoting *Jefferson v. State*, 138 So. 3d 263, 265 (¶9) (Miss. Ct. App.

2014)).

¶15.   Moreover, the issues raised by the separate opinion relating to the provisions of the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408, are not jurisdictional in the sense that they should or must be raised sua sponte by an appellate court. In *Mansell v. Mansell*, 490 U.S. 581 (1989), the United States Supreme Court noted that the ex-wife "argue[d] that the doctrine of res judicata should have prevented [the parties'] property settlement from being reopened" despite its alleged conflict with federal law. *Id.* at 586 n.5.  In response to this argument, the Supreme Court stated,

> The California Court of Appeal, however, decided that it was appropriate, under California law, to reopen the settlement and reach the federal question. Whether the doctrine of res judicata, as applied in California, should have barred the reopening of [the] settlement[] is a matter of state law over which we have no jurisdiction.

*Id.* (citation omitted).  On remand, the California Court of Appeal rejected the husband's argument that the original divorce decree's division of disability pay was void for lack of subject matter jurisdiction. *In re Marriage of Mansell*, 217 Cal. App. 3d 219, 227-29, 265 Cal. Rptr. 227, 231-32 (Cal. Ct. App. 1989).  The appellate court stated that while the trial court "should have applied federal rather than state law in determining the character of the retired pay, it was within the court's jurisdiction to make that characterization, right or wrong." *Id.* at 229, 265 Cal. Rptr. at 232.  In addition, the appellate court held that the trial court properly refused to reopen the divorce decree based on state-law finality principles. *See id.* at 234-36, 265 Cal. Rpt. at 236-37.  The United States Supreme Court subsequently

denied certiorari. *Mansell v. Mansell*, 498 U.S. 806 (1990).[5] As such, the provisions of the USFSPA are not jurisdictional in the sense that they should or must be raised sua sponte by an appellate court.

¶16. Thus, under contract law and based on the arguments raised on appeal, this Court is compelled to conclude that the chancery court was not in error for enforcing the PSA according to the terms agreed to by the parties and awarding Julie a judgment for the retirement pay that George had failed to pay to her.

## II. Child Support Arrearage

¶17. The second issue George raises on appeal is whether the chancery court erred by failing to give him credit for "in-kind" contributions he made directly to the children as child support. George asserts that he made the following contributions: in 2017, $2,531.41 toward

---

[5] Following the ultimate conclusion of the *Mansell* litigation, a number of states have held that even where a similar judgment dividing marital property was inconsistent with or preempted by federal law, it was not void or subject to collateral attack where the state court properly had subject matter jurisdiction. *E.g.*, *Foster v. Foster*, 983 N.W.2d 373, 380 (Mich. 2022) (holding that a property settlement/divorce decree dividing the husband's disability benefits was enforceable based on state-law principles of res judicata even though preempted by federal law); *Gross v. Wilson*, 424 P.3d 390, 396-98 (Alaska 2018) (holding that a final judgment of divorce was not void or subject to collateral attack even if it violated federal law by dividing the husband's VA disability pay); *Coon v. Coon*, 614 S.E.2d 616, 617-18 (S.C. 2005) (holding that federal law "supplants state domestic-relations law pursuant to the Supremacy Clause[,] . . . but it does not pre-empt state-court subject-matter jurisdiction"; thus, a divorce judgment is not void even if it violated federal law by awarding the wife more than fifty percent of the husband's disposable retired pay). *See also* 2 Brett R. Turner, *Equitable Distribution of Property* § 6:6, at 42 (3d ed. 2005) (stating that a "[s]trong majority of state court cases" hold that a final divorce judgment is enforceable under the law of res judicata even if its division of retirement pay or VA disability pay violates federal law; criticizing the contrary "minority" view).

9

their daughter's car note, insurance, and tag; in 2018, $5,178.18 toward their daughter's car note, insurance, and tag; in 2019, $7,344.41 toward their daughter's car note, insurance, tag, and engine repair; and in 2020, $5,889.52 for their son's car note, insurance, and tag, as well as $3,621 for their son's apartment rent. George contends that he should have been given credit against his child support arrearage for these in-kind contributions because they were expenses within the definition of "child support," and to hold otherwise would unjustly enrich Julie, who benefitted from George's in-kind contributions to their son and daughter. As a result, George argues that he is not in arrears on his child support obligation.

¶18.    "The amount of arrearage in child support is a question of fact and is subject to our limited standard of review." *Baier v. Baier*, 897 So. 2d 202, 204 (¶11) (Miss. Ct. App. 2005) (quoting *Crow v. Crow*, 622 So. 2d 1226, 1231 (Miss. 1993)). Our courts have on previous occasions specifically "allow[ed] a father to be credited for support given directly to the children rather than through the wife." *Id*. "Mississippi law permits a non-custodial parent to 'receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother.'" *Id*. (quoting *Crow*, 622 So. 2d at 1231). This Court has explained,

> This principle applies, however, only where the [non-custodial parent] proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing, and other necessities for the child.

*Artz v. Norris*, 163 So. 3d 983, 989 (¶19) (Miss. Ct. App. 2015) (quoting *Crow*, 622 So. 2d

10

at 1231).[6] Furthermore, even in instances where "a parent is entitled to receive child support credit for expenses he paid directly to a child, the evidence must be clear and convincing." *Baier*, 897 So. 2d at 205 (¶13).

¶19. The only evidence of George's in-kind contributions came from his own testimony, during which he listed a compilation of monetary expenses that he purportedly paid for the benefit of their son and daughter. These expenses included financing a vehicle, a vehicle tag, and vehicle insurance for both children; vehicle repairs for their daughter; and apartment rent for their son. George "offered no evidence of the amounts he paid directly to his children other than his testimony." For instance, George "did not present the [expense compilation] into evidence, nor did he present [deposited] checks, corroborating witnesses, or evidence of any kind" to prove the existence or the amount of his in-kind payments or contributions. *Id*.[7] "Whether or not these payments should be credited to [George] against his child support arrearage was a question left for the chancellor's discretion." *Wesson*, 818 So. 2d at 1280 (¶21).

---

[6] *See also Nichols v. Tedder*, 547 So. 2d 766, 769 (Miss. 1989) ("In the context of child care and maintenance orders, regular child support refers to the sums of money which the particular parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter."); *Varner v. Varner*, 588 So. 2d 428, 435 (Miss. 1991) ("[P]ayments such as college tuition will seldom qualify, as they do not diminish the child's need for food, clothing and shelter.").

[7] *Cf. Artz*, 163 So. 3d at 989 (¶22) ("Based on the evidence, we cannot say the chancellor erred in not granting Barry credit for the money paid directly to Caleb. While Caleb would regularly draw from the account established by Barry for Caleb's use, Barry has failed to meet his burden of showing that the support money was used to provide food, shelter, clothing, and other necessities for Caleb.").

¶20.    Additionally, George's "argument seems to hinge on his assumption that anything provided by him to the children would have to be classified as child support and deducted from the monthly award." *Turnage v. Brooks*, 213 So. 3d 103, 107 (¶15) (Miss. Ct. App. 2016). But "[t]his is simply not the case under Mississippi law; we have routinely authorized separate awards of housing, transportation, medical care or insurance, college or private school expenses, and the like, as support in addition to monthly cash payments." *Id*. The purchases of vehicles for their son and daughter were not ordered by the terms of the PSA but, instead, were both George's choice to purchase. "[T]o permit a parent credit for voluntary payments would allow such parent to vary the terms of the judgment, and to usurp from the custodial parent the right to determine the manner in which support money should be spent." *Farrior v. Kittrell*, 12 So. 3d 20, 23 (¶14) (Miss. Ct. App. 2009).[8]

¶21.    George further argues that he should be entitled to credit for their son's apartment rent in Starkville because their son had moved out of Julie's house, and the "financial load on Julie significantly diminished." Contrary to George's belief, "[i]f [George] wished to pay his support obligation directly to [their son] while he was attending college away from home, he should have petitioned the court to modify the prior decree." *Artz*, 163 So. 3d at 988 (¶14).[9]

_____

[8] "[T]his Court is sympathetic to Defendant's plight, but a vehicle . . . was not in the manner of the child support ordered by the Court. Therefore, Defendant is not entitled to a credit for the payments of the vehicle or the insurance." *Carite v. Carite*, 841 So. 2d 1148, 1155 (¶16) (Miss. Ct. App. 2002).

[9] "Even though [their son] was attending college in [Starkville], [Julie] was still the custodial parent, and the agreed order requiring payment of [$432] per month for [their son's] benefit was to remain in effect." *Artz*, 163 So. 3d at 988 (¶14). *Cf. Nichols*, 547 So.

"As our Supreme Court has stated, he who unilaterally modifies a court order does so at his own peril." *Carite*, 841 So. 2d at 1155 (¶16) (quoting *Alexander v. Alexander*, 494 So. 2d 365, 367 (Miss. 1986)); *see also Crow*, 622 So. 2d at 1231 ("No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity." (quoting *Cumberland v. Cumberland*, 564 So. 2d 839, 847 (Miss. 1990))).

¶22. We find that the record lacks the requisite evidence from George to prove that he made in-kind contributions directly to their son and daughter or to show that the contributions were used for purposes consistent with the child support order. Based on the lack of evidence, we cannot find that the court erred by denying George credit for these alleged in-kind contributions.

## CONCLUSION

¶23. After reviewing the specific issues brought before us on appeal, we find that the chancery court made no error by examining the terms of the provision in the PSA regarding George's military retirement pay and ordering that George owed Julie payment in the amount of $65,377.60 for past-due retirement pay. Additionally, we find no error in the court's determination that George was in arrears on his child support obligation, that he owed Julie $10,200 in unpaid child support, and that he was not entitled to credit for his voluntary, in-

2d at 781 (Miss. 1989) ("In *Alexander v. Alexander*, 494 So. 2d 365 (Miss.1986), this Court recognized the injustice of allowing the mother to continue to receive child support payments for a child who no longer lived with her, but in fact lived with the child's father.").

kind contributions to their son and daughter. Thus, we affirm the court's judgment awarding military retirement pay and child support pay to Julie.

¶24.   **AFFIRMED.**

**WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J.**

**CARLTON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶25.   I concur with the majority that the chancery court's award of past-due child support should be affirmed.  However, I find that the award for unpaid retirement pay was an abuse of discretion, and I would reverse this issue and remand it to the chancery court for further proceedings.

¶26.   In 2012, the chancery court entered a judgment granting George Manley and Julie Manley a divorce.  A Property Settlement Agreement (PSA) executed by the parties was incorporated into the divorce judgment.  In 2019, Julie filed a motion petitioning the chancery court to cite George for contempt because "Pursuant to Paragraph 14 of the [PSA], George was to pay one-half of all retirement pay each month. However, he has not done so." After a hearing, the chancery court entered its final judgment in favor of Julie and determined that George owed $65,377.60 in unpaid retirement pay pursuant to Paragraph 14 of the PSA that was incorporated into the judgment of divorce.

¶27.   As stated by the majority, this Court "afford[s] chancellors much discretion in our

14

review of domestic-relations cases." *King v. King*, 130 So. 3d 166, 167 (¶3) (Miss. Ct. App. 2014). "If supported by substantial evidence, [the] chancellor's factual findings will not be disturbed unless 'the chancellor abused [his or her] discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.'" *Wooten v. Wooten*, 333 So. 3d 610, 614-15 (¶9) (Miss. Ct. App. 2022).

¶28.    Regarding the issue of his retirement pay, George argues that the chancery court erred in finding that he failed to comply with the parties' PSA because he had unilaterally reduced his "retirement pay" by signing a VA waiver and therefore reduced Julie's 50% share below the $821.50 listed in the PSA. Section 14 of the parties' PSA provides in relevant part:

> RETIREMENT.   George and Julie shall equally divide (50/50) George's military retirement. It is further agreed and understood that George's retirement pay is $1,643.00 at the time of this agreement. It is further agreed and understood that the actual estimated monthly distribution to each party shall be $821.50, but in all instances payment to Julie shall be exactly 50% of the retirement pay.

¶29.    The terms of the PSA reflect that the parties contemplated a possible change in the amount of military retirement pay and amount of distribution in the future. In 1982, Congress enacted the Former Spouses' Protection Act, which has since evolved into the Uniformed Services Former Spouse's Protection Act (USFSPA), codified under 10 U.S.C. 1408 (2012). *Howell v. Howell*, 581 U.S. 214, 217 (2017).[10]  The USFSPA is a federal

---

[10] For context underlying the enactment of the USFSPA, "[i]n *McCarty v. McCarty*, 453 U.S. 210 . . . (1981), [the Supreme Court] held that the federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property." *Mansell v. Mansell*, 490 U.S. 581, 584 (1989) (citing 10 U.S.C.

statute which "affirmatively grants state courts the power to divide military retirement pay, yet its language is . . . limit[ing]." *Mansell*, 490 U.S. at 588.[11] Under the authority of the USFSPA, "a State may treat veterans' 'disposable retired pay' as divisible . . . ." *Howell*, 581 U.S. at 217. The statute specifically "provides that 'a court may treat disposable retired . . . pay either as property solely of the [military] member or as property of the member and his spouse," i.e. marital property. *Mansell*, 490 U.S. at 588-89. However, "under the [USFSPA]'s plain and precise language, state courts . . . have *not* been granted the authority to treat *total* retired pay as [marital] property." *Id.* at 589 (emphasis added). Simply, "while state courts appropriately [can] divide *disposable* retired pay in divorce proceedings, this authority [does] not extend to dividing '*total* retired pay.'" *Mallard v. Burkart*, 95 So. 3d 1264, 1270 (¶15) (Miss. 2012) (emphasis added).

¶30. The transcripts from trial indicate that the chancery court focused on George's total military retirement pay and the total amount of income George would have received if he had not signed the VA waiver. The court even went as far as pointing to George's Retiree Account Statement from November 2012, and identifying that George's monthly gross pay was listed as $1,643, which was consistent with the amount listed by the parties in the PSA.

---

§ 1408(c)(1)). Thereafter, "[i]n direct response to *McCarty*, Congress enacted the Former Spouses' Protection Act, which authorizes state courts to treat 'disposable retired or retainer pay' as community property", i.e., marital property divisible upon divorce. *Id.*

[11] The "term—'disposable retired . . . pay'—is used in § 1408(c)(1) to limit specifically and plainly the extent to which state courts may treat military retirement pay as [marital] property." *Mansell*, 490 U.S. at 590.

¶31.   However, federal law precluded the chancery court from dividing George's *total* military retirement, and specifically prohibited the court from distributing any of George's disability benefits pay to Julie.  Pursuant to the USFSPA, I find that it was error for the court to determine the amount of payment Julie was entitled to receive based upon the amount of George's gross pay and total military retirement income.

¶32.   Disposable retired pay "is defined as 'the total monthly retired . . . pay to which a military member is entitled,' less certain specified deductions[.]" *Id*. at 1269 (¶13) (quoting *Mansell*, 490 U.S. at 584-85).  Encompassed in "the amounts which *must* be deducted from the total pay are any amounts which [have] be[en] waived in order to receive disability benefits." *Id*. (emphasis added).  The "[USFSPA] expressly excluded from its definition of '*disposable* retired pay,'" the "amount that the Government deducts" from retirement pay "'as a result of a waiver' that the veteran must make 'in order to receive' disability benefits." *Howell*, 581 U.S. at 216-17 (emphasis added) (quoting 10 U.S.C. § 1408(a)(4)(A)(ii)).  Taken together, this means that "[s]tate[s] cannot treat as [marital] property, and divide at divorce, . . . the waived portion[] of the veteran's retirement pay." *Id*. at 216; *see also Mallard*, 95 So. 3d at 1272 (¶15) (The USFSPA "does not grant state courts the power to treat as property divisible upon divorce[,] military retirement pay that has been waived to receive veterans' disability benefits.").[12]

---

[12] Additionally, "state courts are precluded from allocating military disability benefits to a nonmilitary spouse." *Mallard*, 95 So. 3d at 1266 (¶23).

¶33. "Members of the Armed Forces . . . may retire with retired pay," and those "who became disabled as a result of military service are eligible for disability benefits." *Mansell*, 490 U.S. at 583. However, "to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." *Id*.; *see also Howell*, 581 U.S. at 216 ("[T]o prevent double counting, however, federal law typically insists that, to receive disability benefits, a retired veteran must give up an equivalent amount of retirement pay."). In other words, the military member may opt to receive disability benefits pay as an alternative to retired pay, but the member must agree to forego retired pay in the amount equivalent to the disability benefits pay received.[13]

¶34. The Mississippi Supreme Court has held that "state law is preempted by federal law, and thus, state courts are precluded from ordering distribution of military disability benefits contrary to federal law." *Mallard*, 95 So. 3d at 1272 (¶21).

¶35. George testified that he retired from the Air National Guard on disability in 2008, and later separately retired from the Air Force in 2011. He stated that he signed a waiver with the VA "in 2010 or possibly . . . [the] end of 2009" as a "part[ ] of [his] out briefing . . . so that [his] military benefits [could] start to kick in with the Veterans Administration." George further explained that pay for disability benefits that is drawn from the "VA is separate from

---

[13] "For example, if a military retiree is eligible for $1,500 a month in retirement pay and $500 a month in disability benefits, he must waive $500 of retirement pay before he can receive any disability benefits." *Mansell*, 490 U.S. at 583 n.1.

18

retirement" pay and that his "VA pay was . . . deducted . . . from [his] retirement pay."

¶36.    George's Retiree Account Statement from November 2012, provides evidence of his itemized pay showing that at the time the parties' divorce was finalized, George was receiving pay for a "VA waiver." His Retiree Account Statement from December 2020 shows that he was receiving disability benefits pay pursuant to the VA waiver at that time too. As stated in Mansell, for George to be receiving payment for disability benefits, he must have waived the corresponding amount of "retirement pay."

¶37.    The record here clearly shows that after George retired from the military, he signed a VA waiver agreeing to forego a portion of his retirement pay in order to receive the military disability benefits to which he was entitled. Because disability benefits were not specifically addressed in the 2012 PSA, the chancery court construed the agreement to require division and distribution of George's total retirement pay without any consideration to his election of disability benefits pay and VA waiver. In doing so, the court treated the portion of George's retirement pay that he waived for disability benefits as divisible marital property. The USFSPA does not grant authority to devise the VA waived portion of military retirement. As such, the chancery court did not have authority to include as part of Julie's 50% share, the portion of pay that George waived through the VA. I therefore find that the chancery court erred by devising the entirety of George's retirement pay and disability benefits pay as marital property.

¶38.    The provisions of the USFSPA instruct that before dividing military retirement in

19

divorce proceedings, the total retired pay must be reduced by the corresponding amount of disability benefits pay that the member received pursuant to the VA waiver. Thus, the chancery court was required to determine the amount constituting George's disposable retired pay over which it had authority to divide as marital property by subtracting the amount of George's disability benefits pay from his total retirement. Only after the court calculated George's disposable retired pay would the court then be able to properly determine the division of military retirement between George and Julie.

¶39. Because I find that the chancery court improperly calculated Julie's share of military retirement and erroneously granted her a percentage of George's disability benefits pay, I would reverse. The record before this Court does not contain sufficient information to properly calculate the amount of payment that Julie was entitled to receive as her share of George's military retirement. Accordingly, I would remand this case for George to submit further evidence of his retirement pay and disability pay from 2012 through the present, and for George and Julie to each submit any evidence they have as to the specific amounts George previously paid Julie for retirement. I would also instruct the chancery court to make further determinations consistent with this ruling, as to George's disposable military retirement pay according to the provisions of federal law under the USFSPA, and the amount of retirement Julie is entitled to be paid for her 50% share of George's disposable retirement pay.

**BARNES, C.J., JOINS THIS OPINION.**